## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**AMERISURE MUTUAL
INSURANCE COMPANY f/k/a
MICHIGAN MUTUAL
INSURANCE COMPANY**, a
Michigan corporation,

       Plaintiff,

v.

**SWISS REINSURANCE AMERICA
CORPORATION**,

       Defendant.

Case No: 2:22-cv-12298

---

| | |
|---|---|
| JEFFEREY C. GERISH (P51338) | MICHELE A. CHAPNICK (P48716) |
| TANYA M. MURRAY (P82517) | **GREGORY, MEYER &** |
| **PLUNKETT COONEY, P.C.** | **CHAPNICK, P.C.** |
| Attorneys for Plaintiff | Attorneys for Defendant |
| 38505 Woodward Ave., Ste 100 | 340 E. Big Beaver Road, Ste. 520 |
| Bloomfield Hills, MI 48304 | Troy, MI 48083 |
| (248) 901-4031 | (248) 689-3920/(248) 689-4560 – Fax |
| jgerish@plunkettcooney.com | mchapnick@gregorylaw.com |
| tmurray@plunkettcooney.com | |

---

## <u>NOTICE OF REMOVAL</u>

Defendant Swiss Reinsurance America Corporation ("Swiss Re") hereby files

this Notice of Removal, effecting removal of this case, originally filed in the Circuit

Court for the County of Oakland in the State of Michigan, to the United States

District Court for the Eastern District of Michigan pursuant to 28 U.S.C. §§ 1441 and 1446.  In support of this Notice, Swiss Re states as follows:

## **INTRODUCTION**

1.      On or about August 20, 2022, Amerisure Mutual Insurance Company ("Amerisure") filed a civil action (Case No. 2022-195862-CB) against Swiss Re in the Circuit Court for the County of Oakland in the State of Michigan (the "State Court Action"). *See* Amerisure's Complaint ("Complaint"), attached hereto pursuant to 28 U.S.C. § 1446(a).

2.      To the best of Swiss Re's knowledge, the Complaint has not been served, although Amerisure provided a courtesy copy upon Swiss Re on September 2, 2022.

3.      Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over the State Court Action because: (1) there is complete diversity of citizenship between Swiss Re and Amerisure; and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs. As a result, the State Court Action is removable under 28 U.S.C. § 1332 and 1441(a).

4.      This Notice is being timely filed in compliance with 28 U.S.C. § 1446(b), *i.e.*, within thirty (30) days after September 2, 2022, on which date Swiss Re first received a copy of the Complaint.

## DIVERSITY JURISDICTION

5.     This action involves a controversy between citizens of different states.

6.     Amerisure is a corporation organized and existing under the laws of the State of Michigan, and Amerisure has its principal place of business in the State of Michigan. As such, Amerisure is domiciled in the State of Michigan and is thus a citizen of Michigan for purposes of diversity jurisdiction.

7.     Swiss Re is a corporation organized and existing under the laws of the State of New York, and Swiss Re has its principal place of business in New York. As such, Swiss Re is domiciled in the State of New York and is thus a citizen of New York for the purposes of diversity jurisdiction.

8.     Therefore, diversity of citizenship exists between the parties.

## AMOUNT IN CONTROVERSY

9.     In this case, the parties seek a declaratory judgment regarding their rights and obligations under certain contracts of reinsurance between Amerisure and Swiss Re.

10.     As such, the Complaint does not allege an amount in controversy. When a plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so. 28 U.S.C § 1446(c)(2)(A); *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014).  When a defendant seeks federal-court adjudication, the defendant's amount in controversy allegation

should be accepted when not contested by the plaintiff or questioned by the court. *Id.* at 87 (2014). A defendant's notice of removal must include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. *Id.* at 89.

11.    In this case, Amerisure seeks a declaratory judgment that Swiss Re must indemnify it under certain reinsurance contracts issued by Swiss Re's predecessors with potentially applicable policy limits of $3,500,000.

12.    Additionally, the current amount of disputed billings between Amerisure and Swiss Re exceeds $1 million, and that amount is likely to increase significantly.

13.    Therefore, the amount in controversy exceeds $75,000, exclusive of interest and costs.

## **COMPLIANCE WITH PROCEDURAL PREREQUISITES TO REMOVAL**

14.    This action is properly removed to this Court, as the State Court Action is pending within the district and division of this Court. *See* 28 U.S.C. 1441(a).

15.    Pursuant to 28 U.S.C. § 1446(a), Swiss Re attaches a copy of the Complaint which is the only pleading Swiss Re received in connection with the State Court Action.

16.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for the Plaintiff, and a copy is also being filed with the

Clerk of the Circuit Court for the County of Oakland, State of Michigan.

17.     By filing this Notice, Defendant does not waive, and expressly reserves, all rights, defenses, and objections of any nature that they may have against Plaintiff's claims.

**WHEREFORE**, Defendant Swiss Re respectfully requests that this action be removed from the State of Michigan, Circuit Court for the County of Oakland, to the United States District Court for the Eastern District of Michigan and that this Court assume jurisdiction of this action and make such further orders as may be required to properly determine this controversy.

Respectfully submitted,

/s/ Michele A. Chapnick
MICHELE A. CHAPNICK
**GREGORY, MEYER & CHAPNICK, P.C.**
Attorneys for Defendant
340 E. Big Beaver Road, Ste. 520
Troy, MI 48083
(248) 689-3920/(248) 689-4560 -Fax
mchapnick@gregorylaw.com
Dated:  September 28, 2022          P48716

Of Counsel:
Mark G. Sheridan
BATESCAREY LLP
191 N. Wacker Drive, Suite 2400
Chicago, IL 60606
312-762-3152
msheridan@batescarey.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 28, 2022, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system and I hereby certify that I have emailed and mailed by United States Postal Service the paper to the following non-ECF participants:

JEFFEREY C. GERISH
TANYA M. MURRAY
**PLUNKETT COONEY, P.C.**
Attorneys for Plaintiff
38505 Woodward Ave., Ste 100
Bloomfield Hills, MI 48304
jgerish@plunkettcooney.com
tmurray@plunkettcooney.com

Oakland County Circuit Court – by Efiling through the Court's MiFile/TrueFiling system on September 28, 2022

/s/ Michele A. Chapnick
MICHELE A. CHAPNICK (P48716)
**GREGORY, MEYER & CHAPNICK, P.C.**
Attorneys for Defendant
340 E. Big Beaver Road, Ste. 520
Troy, MI  48083
(248) 689-3920/(248) 689-4560 – Fax
mchapnick@gregorylaw.com

3049998

This case has been designated as an eFiling case, for more information please visit www.oakgov.com/efiling.

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

| | | |
|---|---|---|
| AMERISURE MUTUAL INSURANCE COMPANY f/k/a MICHIGAN MUTUAL INSURANCE COMPANY, a Michigan corporation, | ) ) ) ) | 2022-195862-CB |
| Plaintiff, | ) ) ) | JUDGE MICHAEL WARREN Case No. _____-CB |
| v. | ) ) | Hon. |
| SWISS REINSURANCE AMERICA CORPORATION, | ) ) ) | |
| Defendant. | | |

JEFFREY C. GERISH (P51338)
TANYA M. MURRAY (P82517)
Plunkett Cooney, P.C.
38505 Woodward Ave., Ste. 100
Bloomfield Hills, MI 48304
(248) 901-4031
jgerish@plunkettcooney.com
tmurray@plunkettcooney.com
*Attorneys for Plaintiff*

There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in the complaint.

**AMERISURE MUTUAL INSURANCE COMPANY'S COMPLAINT AND JURY DEMAND**

Plaintiff Amerisure Mutual Insurance Company f/k/a Michigan Mutual Insurance Company ("Amerisure"), through its attorneys, hereby files this Complaint against Defendant Swiss Reinsurance America Corporation, as successor in certain interests to Kemper Reinsurance Company and North American Reinsurance Corporation ("Swiss Re"), stating as follows:

FILED    Received for Filing    Oakland County Clerk    8/30/2022 12:50 PM

## INTRODUCTION AND NATURE OF THE ACTION

1.     This is an action for declaratory relief, brought pursuant to MCR 2.605, to determine and resolve questions of actual controversy between Amerisure, and its reinsurer, Swiss Re, regarding the defense obligations required of Amerisure to its insured, Armstrong International Inc. ("Armstrong"), and the accompanying reinsurance obligations owed by Swiss Re to Amerisure.

2.     Amerisure seeks a declaratory judgment pursuant to MCR 2.605, declaring the present and future rights, duties, and liabilities of Amerisure and Swiss Re under the Umbrella Policies (herein defined) and Facultative Reinsurance Certificates (herein defined), and declaring that defense costs Amerisure is obligated to pay on Armstrong's behalf under the Umbrella Policies for the Asbestos Lawsuits (herein defined) are paid in addition to the reinsurance accepted limits stated on the Facultative Reinsurance Certificates, which are eroded only by indemnity payments.

## PARTIES

3.     Amerisure is incorporated in Michigan and has its principal place of business in Farmington Hills, Michigan.

4.     Swiss Re is incorporated in Zurich, Switzerland and has its principal place of business in Armonk, New York.

## JURISDICTION AND VENUE

5.     Pursuant to Mich. Const. Art. 6, § 13, MCL 600.601 and MCL 600.605, this Court has original jurisdiction over this action because the controversy exceeds the minimum jurisdictional amount of Twenty-Five Thousand Dollars ($25,000).

6.      Pursuant to MCL 600.8035, assignment of this matter to the Business Court is appropriate because this matter involves a dispute over the scope and availability of commercial insurance coverage in which declaratory relief is sought.

7.      Venue is proper in this Court pursuant to MCL 600.1621 because Swiss Re conducts business in Oakland County, Michigan, and Amerisure's principal place of business is in Oakland County, Michigan.

<div align="center">

**THE POLICIES ISSUED TO ARMSTRONG**

</div>

8.      Amerisure issued to Armstrong the following Policies for 1979-1981 ("Umbrella Policies"):

| Policy Number | Policy Period |
|---|---|
| SRF29-0-548474 | 01/01/79 – 01/01/80 |
| SRFMG29-4-48147-1 | 01/01/80 – 01/01/81 |

Upon information and belief, relevant portions of the Umbrella Policies, as set forth below, are the same.  Actual copies of the Umbrella Policies have long since been destroyed.  A reconstructed copy of Policy No. SRFMG29-4-48147-1 is attached as Exhibit 1 and is incorporated here by reference in its entirety pursuant to MCR 2.113(D).

9.      The Insuring Agreement of the Umbrella Policies provides, in relevant part:

**I.      COVERAGE**

To indemnify the insured for all sums which the insured shall be obligated to pay by reason of the liability imposed upon the insured by law, or assumed by the insured under contract or agreement, for damages, direct or consequential, and expenses, all as are more fully defined by the term "ultimate net loss" on account of . . .

(a)      Personal Injuries, including death at any time resulting therefrom . . .

* * *

**II.      LIMIT OF LIABILITY**

<div align="center">3</div>

The company shall only be liable for the ultimate net loss in excess of the "underlying limits" . . .

In the event of reduction or exhaustion of the aggregate limits of liability under said underlying insurance by reason of losses paid thereunder, this policy shall, subject to the terms and conditions of the underlying insurance:
* * *
    (2)    Continue in force as underlying insurance in the event of exhaustion.

    10.    The "underlying insurance," referenced in Section II. Limit of Liability of the Umbrella Policies, provides coverage for defense costs separately, and in addition to, the limits of liability.  Specifically, the "underlying insurance" provides coverage for defense costs as follows:

**Supplementary Payments**. The Company will pay, in addition to the applicable limit of liability:

(a) all expenses incurred by the Company, all costs taxed against the insured in any suit defended by the Company and all interest on the entire amount of any judgment therein which accrues after entry of this judgment and before the Company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the Company's liability thereon;

(b) premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy, and the cost of bail bonds required of the insured because of accident or traffic law violation arising out of the use of any vehicle to which this policy applies, not to exceed $250 per bail bond, but the Company shall have no obligation to apply for or furnish any such bonds;

(c) expenses incurred by the insured for first-aid to others at the time of an accident, for bodily injury to which this policy applies;

(d) reasonable expenses incurred by the insured at the Company's request in assisting the Company in the investigation or defense of any claim or suit, including actual loss of earnings not to exceed $25 per day.

Relevant provisions of the "underlying insurance" issued to Armstrong are attached as Exhibit 2.

## THE FACULTATIVE REINSURANCE CERTIFICATES

11.     Swiss Re assumed liability under certain Facultative Reinsurance Certificates as successor in certain interests to Kemper Reinsurance Company and North American Reinsurance Corporation.

12.     Pursuant to the liability it assumed, Swiss Re reinsured Amerisure for the Umbrella Policies pursuant to the following Facultative Reinsurance Certificates:

| Issuing Entity | Certificate Number | Umbrella Policy Number | Policy Period |
|---|---|---|---|
| Kemper Reinsurance Company | 41465-2-00-79 | SRF-29-0-548474 | 1/1/79 – 1/1/80 |
| Kemper Reinsurance Company | 41465-2-00-80 | SRFMG29-4-48147-1 | 1/1/80 – 1/1/81 |
| North American Reinsurance Corporation | 0946990 | SRFMG29-4-48147-1 | 1/1/80 – 1/1/81 |

The Facultative Reinsurance Certificates are attached as Exhibit 3 through 5 and are incorporated here by reference in their entirety pursuant to MCR 2.113(D).

13.     The Facultative Reinsurance Certificates contain the following or similar terms:

### A.     APPLICATION OF LIABILITY

The liability of the Reinsurer shall follow the terms and conditions of the Company's policy furnished to the reinsurer at the effective date of this reinsurance certificate, unless otherwise specifically provided herein by endorsement made a part of this Certificate.

   * * *

(f)     LOSS PAYABLE.

All Insurance Policy claims involving this reinsurance, when settled by the Company, shall be binding on the Reinsurer, which shall be bound to pay its proportion of such settlements promptly following receipt of proof of loss in the following manner:

(1)    If this reinsurance is on an excess of loss basis, the amount of the Reinsurer's liability for loss hereunder shall be its indicated proportion of the excess amount, if any, by which ultimate loss to the policy exceeds the amount or amounts in excess of which this reinsurance attaches . . . in addition, the Reinsurer will pay its share of Loss Adjustment Expense (excluding Company salaries and office expenses) incurred by the Company in the investigation and settlement of claims and suits involving the policy hereby reinsured.

## THE ASBESTOS LAWSUITS

14.    Armstrong is a defendant in numerous civil actions arising out of its alleged liability for the manufacture, distribution, or sale of asbestos-containing products ("the Asbestos Lawsuits").

15.    The Asbestos Lawsuits have exhausted the limits of liability of the "underlying insurance" issued to Armstrong.  Because, however, the "underlying insurance" requires that Amerisure pay expenses incurred by Armstrong in addition to the applicable limit of liability, Amerisure has continued to contribute to the defense costs incurred by Armstrong in the Asbestos Lawsuits under the Umbrella Policies.

## REINSURANCE COVERAGE FOR THE ASBESTOS LAWSUITS

16.    Pursuant to the Facultative Reinsurance Certificates, Swiss Re's reinsurance liability to Amerisure follows Amerisure's liability to Armstrong.

17.    Amerisure's obligation to contribute defense costs is subject to the Supplementary Payments provision of the "underlying insurance," which considers defense costs as outside, and in addition to, the limits of liability coverage.

6

18.     Swiss Re's reinsurance obligation for defense is therefore outside, and in addition to, the limits of reinsurance liability coverage set forth on the Facultative Reinsurance Certificates.

<u>**COUNT I**</u>
<u>**CAUSE OF ACTION FOR DECLARATORY JUDGMENT**</u>

19.     Amerisure incorporates by reference all allegations in Paragraphs 1-18 as if fully set forth here.

20.     There is an actual case or controversy between Amerisure and Swiss Re regarding reinsurance coverage for the Asbestos Lawsuits under the Facultative Reinsurance Certificates.

21.     Amerisure seeks a declaration that Swiss Re is required to fully reinsure Amerisure for the defense costs apportioned to Swiss Re in the Asbestos Lawsuits, pursuant to the terms of the Umbrella Policies and Facultative Reinsurance Certificates.

WHEREFORE, Amerisure respectfully requests that Court enter a judgment declaring that Swiss Re is required to reinsure Amerisure for the defense costs apportioned to Amerisure in the Asbestos Lawsuits in addition to the reinsurance accepted limits in the Facultative Certificates.

Respectfully submitted,

By:     */s/Jeffrey C. Gerish*
        JEFFREY C. GERISH (P51338)
        TANYA M. MURRAY (P82517)
        38505 Woodward Ave., Ste. 100
        Bloomfield Hills, MI  48304
        (248) 901-4031
        jgerish@plunkettcooney.com
        tmurray@plunkettcooney.com

Dated: August 30, 2022          ***Attorneys for Plaintiff***

7

## DEMAND FOR TRIAL BY JURY

Plaintiff, Amerisure Mutual Insurance Company f/k/a Michigan Mutual Insurance Company, by and through its attorneys, hereby demands a trial by jury in the above entitled cause of action.

<div style="margin-left:40%">

Respectfully submitted,

By:    */s/Jeffrey C. Gerish*
JEFFREY C. GERISH (P51338)
TANYA M. MURRAY (P82517)
38505 Woodward Ave., Ste. 100
Bloomfield Hills, MI  48304
(248) 901-4031
jgerish@plunkettcooney.com
tmurray@plunkettcooney.com
***Attorneys for Plaintiff***
</div>

Dated: August 30, 2022

Open.00095.20131.29509714-1

# *EXHIBIT 1*

*Lyle Walker*

**UMBRELLA LIABILITY POLICY**                    **MICHIGAN MUTUAL INSURANCE COMPANY**  | First Year

| POLICY NUMBER | Renewal of | Dist.-Indiv. | Producer | Date of Issue | Issuing Office | |
|---|---|---|---|---|---|---|
| SRFMG29-4-48147-1 | SRF29-0-548.474 | 52-3080-075 | J.M. Taffee | 12-31-79 | 50 | 79 |

Item 1. Named Insured and Address

Armstrong Machine Works
Armstrong Video Productions
A Division of Armstrong Machine Works
816 Maple Street, Three Rivers, MI 49093

The named insured is:
- [ ] Individual
- [ ] Co-Partnership
- [X] Corporation
- [ ]

Servicing Offices

**52**

Item 2. Policy Period: From
1-1-80    to    1-1-81
12:01 A.M. standard time at the address of the named insured as stated herein.

PREMIUM AMOUNT DUE
$ 41,300

Business of the named insured is: Manufacturing

Item 3.                                    LIMITS OF LIABILITY

The limit of the company's liability and the self insureds retention as set forth in Insuring Agreement II shall be as follows:

(a) Limit of liability for personal injury and/or property damage each occurrence $ 10,000,000

(b) Limit in the aggregate for each annual policy period $ 10,000,000

(c) The self insured retention shall be as indicated in Insuring Agreement II (b) unless designated herein: $ 10,000

Item 4. Premium Computation:

(If **not** Subject to Audit) Flat Premium Charge                    $

| (If Subject to Audit) Estimated Exposure | Rate Per $100 of Receipts includes Canada | Total Estimated Premium |
|---|---|---|
| $26,000,000 | .15885 | 41,300 |

Item 5. | Minimum Annual Premium | $ 41,300 | |
| Installment Premium | Initial Installment | $ |
| | 1st Anniversary | $ |
| | 2nd Anniversary | $ |

Item 6. Endorsements attached to policy at inception: UMB-2, 3, 8, 9, 11, 15, 16, 25, 26, 27, G-503
End't #1 (ERISA), End't #2 (Exclusion Foreign Cov)

pm/

# MICHIGAN MUTUAL INSURANCE COMPANY

SCHEDULE OF UNDERLYING INSURANCE, issued to form a part of Policy No. SRFMG29-4-48147-1

## Armstrong Machine Works

| CARRIER, POLICY NUMBER AND PERIOD | TYPE OF POLICY | LIMITS OF LIABILITY |
|---|---|---|
| (a) Michigan Mutual Insurance Company SRMG91-0-48147-3 1-1-80 to 1-1-81 | Standard Workmen's Compensation and Employers' Liability | Coverage B—Employers' Liability $ 100,000  each person $ 100,000  each accident |
| (b) Michigan Mutual Insurance Company SRMG47-4-48147-2 1-1-80 to 1-1-81 | General Liability including ☒ Products and completed operations ☒ blanket contractual ☒ Personal Injury ☒ "X" and "C" ☒ "U" | Bodily Injury Liability $ 500,000  each occurrence $ 1,000,000 aggregate  Property Damage Liability $ 500,000  each occurrence $ 1,000,000 aggregate |
| (c) Citizens Insurance Company of America AGL 842974 9-28-79 to 9-28-80 | Automobile Liability | Bodily Injury Liability $ 500,000  each person $ 500,000  each occurrence  Property Damage Liability $ 250,000  each occurrence |
| (d) | | |

pm/₁₁f

An "X" marked in the box provided indicates these coverages are provided in the Underlying Policies as listed.

A 2422 (9-75)

UMB-8

## PREMIUM ADJUSTMENT

It is agreed that Condition 1 of the undermentioned policy captioned "Premium" is deleted and the following is substituted:

1. Premium Computation

The premium for this policy shall be based upon the total **Receipts** of the insured during the policy period, for all operations. Upon expiration of each twelve month period, or upon termination date if terminated prior to designated expiration date, the actual amount of such **Receipts** shall be exhibited to the company.

The earned premium for each twelve month period shall be computed by applying the rate set forth in the declarations to each **per $100 of Receipts** and such earned premium shall immediately become due and payable to the company. The advance premium set forth in the declarations is a deposit only, which shall be credited against the earned premium found to be due the company. In no event shall the earned premium be less than the minimum premium set forth in the declarations.

COMPLETE THIS ONLY WHEN ENDORSEMENT IS ISSUED SUBSEQUENT TO THE ORIGINAL POLICY

| Policy Number | Effective Date of Endorsement | District-Indiv. | Producer | Expiration Date of Policy | Date Issued |
|---|---|---|---|---|---|
| SLPMG29-4-48147-1 | | | | | |

This endorsement forms a part of the above numbered policy and is subject to all of the provisions of said policy not specifically modified hereby.

### MICHIGAN MUTUAL INSURANCE COMPANY

Secretary                    President

Countersigned by _____
                                    Authorized Representative

UMB-8 (7-77 Printing)

ENDORSEMENT

<u>FEDERAL PENSION REFORM ACT 1974</u>

It is agreed that this policy shall not apply to any loss in-
curred by an insured by reason of liability for Breach of a
Fiduciary duty imposed under the Employee Retirement Income
Security Act of 1974.

End't #1

**Policy Number**

SRFMG29-4-48147-1

COMPLETE THIS ONLY WHEN ENDORSEMENT IS ISSUED SUBSEQUENT TO THE ORIGINAL POLICY

| Effective Date of Endorsement | District-Indiv. | Producer | Expiration Date of Policy | Date Issued |
|---|---|---|---|---|
| | | | | |

This endorsement forms a part of the above numbered policy and is subject to all of the provisions of said policy not specifically modified hereby.

THIS ENDORSEMENT IS ISSUED BY THE COMPANY INDICATED BELOW

☑ MICHIGAN MUTUAL INSURANCE COMPANY
☐ ASSOCIATED GENERAL INSURANCE COMPANY

Secretary                    President

Countersigned by _____

Authorized Representative

ENDORSEMENT

EXCLUSION-FOREIGN COVERAGE

It is agreed that Insuring Agreement III is amended to read as follows:

This Policy applies to occurrences or accidents which happen during the policy period within

1. The United States of America, its territories possessions, or Canada, or

2. international waters or air space, provided the bodily injury or property damage does not occur in the course of travel or transportation to or from any other country, state or nation, or

3. anywhere in the world with respect to damages because of bodily injruy or property damage arising out of a product which was sold for use or consumption within the territory described in paragraph (1) above, provided the original suit for damages is brought within such territory.

End't #2

Policy Number

SRFMG29-4-48147-1

COMPLETE THIS ONLY WHEN ENDORSEMENT IS ISSUED SUBSEQUENT TO THE ORIGINAL POLICY

| Effective Date of Endorsement | District-Indiv. | Producer | Expiration Date of Policy | Date Issued |
|---|---|---|---|---|
| | | | | |

This endorsement forms a part of the above numbered policy and is subject to all of the provisions of said policy not specifically modified hereby.

THIS ENDORSEMENT IS ISSUED BY THE COMPANY INDICATED BELOW

☑ MICHIGAN MUTUAL INSURANCE COMPANY
☐ ASSOCIATED GENERAL INSURANCE COMPANY

Secretary                    President

Countersigned by _____
                          Authorized Representative

1B-2

## DEFENSE ENDORSEMENT

It is agreed that the Insuring Agreements are amended to add the following:

IV. Defense, Supplementary Payments

With respect to any claim or suit alleging personal injury, property damage, or advertising liability which is not covered by the under-lying policies listed in the "Schedule of Underlying Insurance" attached to the policy or any other applicable insurance, but which is covered by the terms and conditions of this policy, except for the deductible (retention) specified in Insuring Agreement II (b), of the policy, the company shall:

(a) defend any suit against the insured brought within the United States of America, its territories or possessions, alleging such injury or damage and seeking damages on account thereof; but the company may make such investigation, negotiation and settlement of any such suit defended by the company as it deems expedient;

(b) pay all premiums on appeal bonds required in any such suit and all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this policy;

(c) pay all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until the company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon; and

(d) pay all expenses incurred by the company and reimburse the insured for all reasonable expenses, other than loss of earnings, incurred at the company's request or with the company's request or with the company's consent.

The amounts incurred under the foregoing Insuring Agreement are payable by the company in addition to the applicable limit of liability of this policy and shall not be subject to the retention set forth in Insuring Agreement II.

COMPLETE THIS ONLY WHEN ENDORSEMENT IS ISSUED SUBSEQUENT TO THE ORIGINAL POLICY

| Policy Number | Effective Date of Endorsement | District-Indiv. | Producer | Expiration Date of Policy | Date Issued |
|---|---|---|---|---|---|
| | | | | | |

This endorsement forms a part of the above numbered policy and is subject to all of the provisions of said policy not specifically modified hereby.

**MICHIGAN MUTUAL LIABILITY COMPANY**

*Elijah Porter*
Secretary

*Ralph J Z*
Presid

Countersigned by_____        _____
                                                Authorized Representative

1MR-2

UMB-3

## EXCLUSION OF DISCRIMINATION COVERAGE

It is agreed that the following exclusion shall be made a part of this policy:

This policy does not apply to any loss or liability arising out of discrimination because of race, creed, color or national origin.

COMPLETE THIS ONLY WHEN ENDORSEMENT IS ISSUED SUBSEQUENT TO THE ORIGINAL POLICY

| Policy Number | Effective Date of Endorsement | District-Indiv. | Producer | Expiration Date of Policy | Date Issued |
|---|---|---|---|---|---|
| | | | | | |

This endorsement forms a part of the above numbered policy and is subject to all of the provisions of said policy not specifically modified hereby.

MICHIGAN MUTUAL LIABILITY COMPANY

_Secretary_

_Preside_

Countersigned by _____

_Authorized Representative_

UMB-3

UMB-9

## CONTRACTOR'S ENDORSEMENT

It is agreed that:

I.   the undermentioned policy shall not apply to property damage to:

    A.   equipment leased by or rented to the Insured,

    B.   property in the custody of the insured which is to be installed, erected or used in construction by the Insured,

    C.   that particular part of any property, not on premises owned by or rented to the Insured,

        (1)   upon which operations are being performed by or on behalf of the Insured at the time of the property damage arising out of such operations, or

        (2)   out of which any property damage arises, or

        (3)   the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the Insured,

        but C does not apply to products-completed operations as defined in the policy.

II.   except to the extent that coverage is provided in the underlying insurance at the limits specified, the undermentioned policy shall not apply to:

    A.   property damage arising out of:

        (1)   blasting or explosion other than the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment, or

        (2)   the collapse of or structural injury to any building or structure due to (a) grading of land, excavation, borrowing, filling, back-filling, tunnelling, pile driving, cofferdam work or caisson work or (b) moving, shoring, underpinning, raising or demolition of any building or structure or removal or rebuilding of any structural support thereof.

    B.   property damage to wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, borrowing, filling, back-filling or pipe driving or to property damage to other property at any time resulting therefrom.

    C.  any liability for personal injury or property damage
        assumed by the Insured under contract.

III.  the undermentioned policy shall not apply to personal injury
     or property damage arising out of any project insured under
     a joint venture or a "wrap-up" rating plan.

COMPLETE THIS ONLY WHEN ENDORSEMENT IS ISSUED SUBSEQUENT TO THE ORIGINAL POLICY

| Policy Number | Effective Date of Endorsement | District-Indiv. | Producer | Expiration Date of Policy | Date Issued |
|---|---|---|---|---|---|
| | | | | | |

This endorsement forms a part of the above numbered policy and is subject to all of the provisions of said policy not specifically modified hereby.

**MICHIGAN MUTUAL LIABILITY COMPANY**

_Secretary_

_President_

Countersigned by_____

_____
**Authorized Representative**

UMB-9

## EXCLUSION

**UMB-11**

(Engineers, Architects or Surveyors Professional Liability)

It is agreed that the insurance does not apply to personal injury or property damage arising out of any professional services performed by or for the named insured, including

(1) the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications and

(2) supervisory, inspection or engineering services.

COMPLETE THIS ONLY WHEN ENDORSEMENT IS ISSUED SUBSEQUENT TO THE ORIGINAL POLICY

| Policy Number | Effective Date of Endorsement | District-Indiv. | Producer | Expiration Date of Policy | Date Issued |
|---|---|---|---|---|---|
| | | | | | |

This endorsement forms a part of the above numbered policy and is subject to all of the provisions of said policy not specifically modified hereby.

### MICHIGAN MUTUAL LIABILITY COMPANY

_____
Secretary

_____
President

Countersigned by_____

Authorized Representative

UMB-11

UMB-15

## EXCLUSION – CARE, CUSTODY & CONTROL

It is agreed that the undermentioned policy does not apply:

(a) to property occupied by or rented to the insured or

(b) to property used by the insured or

(c) to property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control.

COMPLETE THIS ONLY WHEN ENDORSEMENT IS ISSUED SUBSEQUENT TO THE ORIGINAL POLICY

| Policy Number | Effective Date of Endorsement | District-Indiv. | Producer | Expiration Date of Policy | Date Issued |
|---|---|---|---|---|---|
| | | | | | |

This endorsement forms a part of the above numbered policy and is subject to all of the provisions of said policy not specifically modified hereby.

## MICHIGAN MUTUAL LIABILITY COMPANY

_Secretary_                    _President_

Countersigned by_____    _____
                                      Authorized Representative

UMB-15

UMB–16

## EXCLUSION

### (CONTAMINATION OR POLLUTION)

It is agreed that the insurance does not apply to personal injury or property
damage arising out of the discharge, dispersal, release or escape of smoke,
vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste
materials or other irritants, contaminants or pollutants into or upon land,
the atmosphere or any watercourse or body of water;  But this exclusion does
not apply if such discharge, dispersal, release or escape is sudden and accidental.

COMPLETE THIS ONLY WHEN ENDORSEMENT IS ISSUED SUBSEQUENT TO THE ORIGINAL POLICY

| Policy Number. | Effective Date of Endorsement | District-Indiv. | Producer | Expiration Date of Policy | Date Issued |
|---|---|---|---|---|---|
| | | | | | |

This endorsement forms a part of the above numbered policy and is subject to all of the provisions of said policy
not specifically modified hereby.

## MICHIGAN MUTUAL LIABILITY COMPANY

_Secretary_

_President_

Countersigned by_____

_____
Authorized Representative

UMB-16

UMB-25

## REAL PROPERTY CCC EXCLUSION

It is agreed that this policy shall not apply to any liability
for property damage to real property

(1)   owned or occupied by or rented to the insured,

(2)   used by the insured, or

(3)   in the care, custody or control of the insured or as to which
      the insured is for any purpose execcising physical control.

COMPLETE THIS ONLY WHEN ENDORSEMENT IS ISSUED SUBSEQUENT TO THE ORIGINAL POLICY

| Policy Number | Effective Date of Endorsement | District-Indiv. | Producer | Expiration Date of Policy | Date Issued |
|---|---|---|---|---|---|
| | | | | | |

This endorsement forms a part of the above numbered policy and is subject to all of the provisions of said policy not specifically modified hereby.

MICHIGAN MUTUAL INSURANCE COMPANY

Secretary

President

Countersigned by _____

Authorized Representative

UMB-25

UMB-26

## AUTOMOBILE LIABILITY - FOLLOWING FORM ENDORSEMENT

It is agreed that this policy shall not apply to any liability for
personal injury or property damage arising out of the ownership,
maintenance, operation, use, loading or unloading of any automobile
unless such liability is covered by valid and collectible underly-
ing insurance described in the schedule of underlying insurance and
then only for such hazards for which coverage is afforded under said
underlying insurance.

COMPLETE THIS ONLY WHEN ENDORSEMENT IS ISSUED SUBSEQUENT TO THE ORIGINAL POLICY

| Policy Number | Effective Date of Endorsement | District-Indiv. | Producer | Expiration Date of Policy | Date Issued |
|---|---|---|---|---|---|
| | | | | | |

This endorsement forms a part of the above numbered policy and is subject to all of the provisions of said policy not specifically modified hereby.

MICHIGAN MUTUAL INSURANCE COMPANY

Secretary

President

Countersigned by _____    _____
                                                Authorized Representative

UMB-26

G -503 &
CP 02 54
(WI)

of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE

AUTOMOBILE LIABILITY AND PHYSICAL DAMAGE INSURANCE

## ENDORSEMENT

CANCELLATION CONDITION - AMENDMENT OF FIRST PARAGRAPH
(Michigan)

It is agreed that with respect to the "Cancellation" provisions of the policy:

1. The words "at the address shown in this policy", appearing in the first pa
   raph of the "Cancellation" Condition, are amended to read "at his address
   known to the company or its authorized agent"

2. The provisions (if forming a part of the policy) of the endorsement entitl
   "Amendment of Termination Provisions (Michigan)" apply as stated therein.

3. The provisions, if any, forming a part of the policy which (by endorsement
   otherwise) amend the "Cancellation" provisions of the policy other than as
   stated or designated in this endorsement are deleted.

CP 02 54 &
G-503 (Ed. 11-75)

# *EXHIBIT 2*

## SPECIAL MULTI-PERIL POLICY

A Mutual Company

# MICHIGAN MUTUAL INSURANCE COMPANY

### DETROIT, MICHIGAN

**(A mutual insurance company)**



SPECIAL MULTI-PERIL POLICY

THIS POLICY JACKET WITH THE SPECIAL MULTI-PERIL POLICY FORMS, DECLARATIONS PAGE AND ENDORSEMENTS AS DESIGNATED ON FORM A-2555C ISSUED TO FORM A PART THEREOF, COMPLETES THE ABOVE NUMBERED POLICY.

X-86J (7-80)

## YOUR SPECIAL MULTI-PERIL POLICY - QUICK REFERENCE

### DECLARATIONS PAGE

Your Name
Location of Premises
Policy Period
Coverages
Amounts of Insurance
Deductible

### POLICY PROVISIONS

| | | | |
|---|---|---|---|
| AGREEMENT | Declarations | CONDITIONS - SECTION I | MP0090 - Page 3 |
| | | Vacancy, Unoccupancy and Increase of Hazard | #17 |
| GENERAL CONDITIONS | MP0090 - Page 1 | Protective Safeguards | #18 |
| Premium | # 1 | Mortgage Clause | #19 |
| Time of Inception | # 2 | | |
| Cancellation | # 3 | CONDITIONS - SECTION II | MP0090 - Page 4 |
| Inspection and Audit | # 7 | Insured's Duties in the Event of Occurrence, | # 4 |
| | | Claim, or Suit. | |
| CONDITIONS - SECTION I | MP0090 - Page 2 | Annual Aggregate | # 8 |
| Deductible | # 2 | | |
| Debris Removal | # 5 | DEFINITIONS - SECTION II | MP0090 - Pages 5 and 6 |
| Duties After Loss | # 9 | | |
| Appraisal | #10 | | |

### FORMS PROVISIONS

**SECTION I - PROPERTY INSURANCE COVERAGES**
Property Covered
Property Not Covered
Extensions of Coverage                    Building Form MP0010 or MP0013
Perils Insured Against                     Personal Property Form MP0012 or MP0014
Exclusions
Valuation

**SECTION II - LIABILITY COVERAGES**
Exclusions
Persons Insured                           General Form MP0093
Limits of Liability
Additional Definitions                               or

Premises Medical Payments                 Comprehensive Form MMI202B
  Exclusions                              (Separate Endorsement Required
  Limits of Liability                      For Medical Payments)
  Additional Definitions

**SECTION III - CRIME COVERAGES**           See Form A-2555C Attached For Coverage Applicable

**SECTION IV - BOILER AND MACHINERY**       See Form A-2555C Attached For Coverage Applicable

Assignment of this policy shall not be valid except with the written consent of this Company.
This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

MUTUAL POLICY CONDITIONS This policy is non-assessable. You are a member of the company and shall participate, to the extent and upon the conditions fixed and determined by the Board of Directors in accordance with the provisions of law, in the distribution of dividends so fixed and determined.

IN WITNESS WHEREOF, we have executed and attested these provisions; but this policy shall not be valid unless countersigned by our authorized representative at the agency hereinbefore mentioned.

*Secretary*

*President*

> The insured is notified that by virtue of this policy, he is a member of the Michigan Mutual Insurance Company of Detroit, Michigan, and is entitled to vote either in person or by proxy at any and all meetings of said company. The annual meeting will be held on the second Thursday of May of each year at 10:30 A.M. at the Home Office of the Company in the City of Detroit, Michigan or at such other place in the City of Detroit, to which the members may adjourn such meeting.

The Federal Fair Credit Reporting Act requires that we advise you that a routine inquiry may be made which will provide applicable information concerning personal characteristics and mode of living. Upon written request, additional information as to the nature and scope of the survey will be provided.



SPECIAL MULTI-PERIL POLICY CONDITIONS AND DEFINITIONS
GENERAL CONDITIONS.

MP 00 90
(Ed. 07 77)

The following Conditions apply to Section I and II except as otherwise indicated. Additional Conditions or modifications of the following Conditions may appear in the specific coverage sections.

1. Premium. All premiums for this policy shall be computed in accordance with the Company's rules, rates, rating plans, premiums and minimum premiums applicable to the insurance afforded herein.

If this policy is issued for a period in excess of one year with a specified expiration date and a premium is payable at each anniversary, such premium shall be determined annually on the basis of the rates in effect at the anniversary date.

If this policy is issued for a period without a specified expiration date, it may be continued by payment of the required premium for the succeeding annual period. Such premium must be paid to the Company prior to each anniversary date; if not so paid, this policy shall expire on the first anniversary date that the said premium has not been received by the Company.

2. Time of Inception. To the extent that coverage in this policy replaces coverage in other policies terminating noon standard time on the inception date of this policy, coverage under this policy shall not become effective until such other coverage has terminated.

3. Cancellation. This policy may be cancelled by the named insured by surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the Company by mailing to the named insured at the mailing address shown in the Declarations, written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the Company shall be equivalent to mailing.

If the named insured cancels, the Company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

Notice of cancellation addressed to the named insured and mailed to the mailing address shown in the Declarations shall be sufficient notice to effect cancellation of this policy.

4. Concealment or Fraud. This policy is void if any insured has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance.

5. Assignment. Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon. However, if the named insured shall die, this insurance shall apply:

(a) to the named insured's legal representative, as the named insured, but only while acting within the scope of his duties as such; or

(b) to the person having temporary custody of the property of the named insured but only until the appointment and qualification of the legal representative.

6. Subrogation.

(a) In the event of any payment under this policy, the Company shall be subrogated to all the insured's rights of recovery against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.

(b) The Company shall not be bound to pay any loss if the insured has impaired any right of recovery for loss; however, it is agreed that the insured may:

(1) as respects property while on the premises of the insured, release others in writing from liability for loss prior to loss, and such release shall not affect the right of the insured to recover hereunder, and

(2) as respects property in transit, accept such bills of lading, receipts or contracts of transportation as are ordinarily issued by carriers containing a limitation as to the value of such goods or merchandise.

7. Inspection and Audit. The Company shall be permitted but not obligated to inspect the named insured's property and operations at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking on behalf of or for the benefit of the named insured or others to determine or warrant that such property or operations are safe or healthful or in compliance with any law, rule or regulation.

The Company may examine and audit the named insured's books and records at any time during the policy period and extensions and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

8. Liberalization Clause. In the event any filing is submitted to the insurance supervisory authorities on behalf of the Company, and:

(a) the filing is approved or accepted by the insurance authorities to be effective while this policy is in force or within 45 days prior to its inception; and

(b) the filing includes insurance forms or other provisions that would extend or broaden this insurance by endorsement or substitution of form, without additional premium;

the benefit of such extended or broadened insurance shall inure to the benefit of the insured as though the endorsement or substitution of form had been made.

9. Insurance Under More Than One Coverage, Part or Endorsement. In the event that more than one coverage, part or endorsement of this policy insures the same loss, damage or claim, the Company shall not be liable for more than the actual loss or damage sustained by the insured.

10. Waiver or Change of Provisions. The terms of this insurance shall not be waived, changed or modified except by endorsement issued to form a part of this policy.

## CONDITIONS APPLICABLE TO SECTION I

**1. Policy Period, Territory.** Section I of this policy applies only to loss to property during the policy period while such property is within or between the fifty states of the United States of America, the District of Columbia and Puerto Rico.

**2. Deductible.** Unless otherwise provided in the Declarations:

(a) The sum of $100 shall be deducted from the amount of loss to property in any one occurrence. This deductible shall apply:

(1) separately to each building, including personal property therein;

(2) separately to personal property in each building if no coverage is provided on the containing building; and

(3) separately to personal property in the open (including within vehicles).

(b) The aggregate amount of this deductible in any one occurrence shall not exceed $1,000.

**3. Coinsurance Clause.** The Company shall not be liable for a greater proportion of any loss to property covered than the limit of liability under this policy for such property bears to the amount produced by multiplying the actual cash value of such property at the time of the loss by the coinsurance percentage stated in the Declarations.

In the event that the aggregate claim for any loss is both less than $10,000 and less than 5% of the limit of liability for all contributing insurance applicable to the property involved at the time such loss occurs, no special inventory or appraisement of the undamaged property shall be required providing that nothing herein shall be construed to waive the application of the first paragraph of this clause.

If insurance under Section I of this policy is divided into separate limits of liability, the foregoing shall apply separately to the property covered under each such limit of liability.

**4. Removal.** This policy covers loss by removal of the property covered hereunder from premises endangered by the perils insured against, and the amount of insurance applies pro rata for five days at each proper place to which such property shall necessarily be removed for preservation.

**5. Debris Removal.** This policy covers expense incurred in the removal of debris of the property covered which may be occasioned by loss by any of the perils insured against in this policy. The total amount recoverable under this policy for both loss to property and debris removal expense shall not exceed the limit of liability applying to the property. Cost of removal of debris shall not be considered in the determination of actual cash value when applying the Coinsurance Clause.

**6. War Risk And Governmental Action Exclusion.** This policy under Section I shall not apply to loss caused, directly or indirectly, by or due to any act or condition incident to the following:

(a) hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack (i) by any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces; or (ii) by military, naval or air forces; or (iii) by an agent of any such government, power, authority or forces, it being understood that any discharge, explosion or use of any weapon of war employing nuclear fission or fusion shall be conclusively presumed to be such a hostile or warlike action by such a government, power, authority or forces;

(b) insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an occurrence; seizure or destruction under quarantine or custom's regulations, confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade.

**7. Nuclear Clause And Nuclear Exclusion.**

(a) Nuclear Clause (Not Applicable in New York). The word "fire" in this policy is not intended to and does not embrace nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and loss by nuclear reaction or nuclear radiation or radioactive contamination is not intended to be and is not insured against by this policy, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by "fire" or any other perils insured against by this

policy. However, subject to the foregoing and all provisions of this policy, direct loss by "fire" resulting from nuclear reaction or nuclear radiation or radioactive contamination is insured against by this policy.

(b) Nuclear Clause (Applicable only in New York): This policy does not cover loss or damage caused by nuclear reaction or nuclear radiation or radioactive contamination, all whether directly or indirectly resulting from an insured peril under this policy.

(c) Nuclear Exclusion (Not Applicable in New York): Loss by nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing is not insured against by this policy, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by any of the perils insured against by this policy; and nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, is not "explosion" or "smoke". This clause applies to all perils insured against hereunder except the peril of fire, which is otherwise provided for in the nuclear clause above.

**8. Other Insurance.**

(a) If at the time of loss there is other insurance written in the name of the insured upon the same plan, terms, conditions and provisions as contained in this policy, herein referred to as Contributing Insurance, the Company shall be liable for no greater proportion of any loss than the limit of liability under this policy bears to the whole amount of insurance covering such loss.

(b) If at the time of loss there is other insurance other than that as described in (a) above, the Company shall not be liable for any loss hereunder until:

(1) the liability of such other insurance has been exhausted, and

(2) then for only such amount as may exceed the amount due from such other insurance, whether collectible or not.

**9. Duties Of The Named Insured After A Loss.** In case of loss the named insured shall:

(a) give immediate written notice of such loss to the Company;

(b) protect the building and personal property from further damage, make reasonable temporary repairs required to protect the property, and keep an accurate record of repair expenditures;

(c) prepare an inventory of damaged personal property showing in detail, quantity, description, actual cash value and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

(d) exhibit the remains of the damaged property as often as may be reasonably required by the Company and submit to examination under oath;

(e) submit to the Company within 60 days after requested a signed, sworn statement of loss that sets forth to the best of the named insured's knowledge and belief:

(1) the time and cause of loss;

(2) interest of the insured and all others in the property involved and all encumbrances on the property;

(3) other policies of insurance that may cover the loss;

(4) changes in title or occupancy of the property during the term of the policy;

(5) specifications of any damaged building and detailed estimates for repair of the damage;

(6) an inventory of damaged personal property described in (c) above;

(f) give notice of such loss to the proper police authority if loss is due to a violation of law.

**10. Appraisal.** If the named insured and the Company fail to agree on the amount of the loss, either can demand that the amount of loss be set by appraisal. If either party makes a written demand for appraisal, each shall select a competent independent appraiser. Each shall notify the other of the selected appraiser's identity within twenty (20) days of the receipt of the written demand.

The two appraisers shall select a competent, impartial umpire. If the appraisers are unable to agree upon an umpire within fifteen (15) days, the named insured or the Company may petition a judge of a Court of Record in the state where the insured premises is located to select an umpire.

The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to the Company, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of loss.

Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and compensation of the umpire shall be paid equally by the named insured and the Company.

**11. Company Options.** If the Company gives notice within thirty (30) days after it has received a signed, sworn statement of loss, it shall have the option to take all or any part of the property damaged at an agreed value, or to repair, rebuild or replace it with equivalent property.

**12. Abandonment Of Property.** The Company need not accept any property abandoned by an insured.

**13. Payment Of Loss.** The Company will pay all adjusted claims within thirty (30) days after presentation and acceptance of the proof of loss.

**14. Privilege To Adjust With Owner.**

(a) Except as provided in (b) below, or unless another payee is specifically named in the policy, loss, if any, shall be adjusted with and payable to the named insured.

(b) In the event claim is made for damage to property of others held by the insured, the right to adjust such loss or damage with the owner or owners of the property is reserved to the Company and the receipt of payment by such owner or owners in satisfaction thereof shall be in full satisfaction of any claim of the insured for which such payment has been made.

If legal proceedings be taken to enforce a claim against the insured as respects any such loss or damage, the Company reserves the right in its option without expense to the insured to conduct and control the defense on behalf of and in the name of the insured. No action of the Company in such regard shall increase the liability of the Company under this policy, nor increase the limits of liability specified in the policy.

**15. Suit.** No suit shall be brought on this policy unless the insured has complied with all the policy provisions and has commenced the suit within one year after the loss occurs.

**16. Permits And Use.** Except as otherwise provided, permission is granted:

(a) to make alterations and repairs;

(b) in the event of loss hereunder, to make reasonable repairs, temporary or permanent, provided such repairs are confined solely to the protection of the property from further damage, and provided further that the insured shall keep an accurate record of such repair expenditures. The cost of any such repairs directly attributable to damage by any peril insured against shall be included in determining the amount of loss hereunder. Nothing herein contained is intended to modify this policy requirements applicable in case loss occurs, and in particular the requirement that, in case loss occurs, the insured shall protect the property from further damage.

**17. Vacancy, Unoccupancy and Increase of Hazard.**

(a) This Company shall not be liable for loss occurring while a described building, whether intended for occupancy by owner or tenant is vacant beyond a period of sixty consecutive days. "Vacant" or "Vacancy" means containing no contents pertaining to operations or activities customary to occupancy of the building, but a building in process of construction shall not be deemed vacant.

(b) Permission is granted for unoccupancy.

(c) Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring while the hazard is increased by any means within the control or knowledge of the insured.

**18. Protective Safeguards.** If as a condition of this insurance that the insured shall maintain so far as is within his control such protective safeguards as are set forth by endorsement hereto.

Failure to maintain such protective safeguards shall suspend this insurance only as respects the location or situation affected for the time of such discontinuance.

**19. Mortgage Clause—Applicable Only To Buildings.** This clause is effective if a mortgage is named in the Declarations. The word "mortgagee" includes "trustee". Loss to buildings shall be payable to the named mortgagee as interest may appear, under all present or future mortgages on the buildings described in the Declarations in order of precedence of mortgages on them.

As it applies to the interest of any mortgage designated in the Declarations, this insurance shall not be affected by any of the following:

(a) any act or neglect of the mortgagor or owner of the described buildings;

(b) any foreclosure or other proceedings or notice of sale relating to the property;

(c) any change in the title or ownership of the property;

(d) occupancy of the premises for purposes more hazardous than are permitted by this policy;

provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee shall, on demand, pay the premium.

The mortgagee shall notify the Company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of the mortgagee. Unless permitted by this policy, such change of ownership or occupancy or increase of hazard shall be noted on the policy and the mortgagee shall on demand pay the premium for the increased hazard for the term it existed under this policy. If such premium is not paid, this policy shall be null and void.

The Company reserves the right to cancel this policy at any time as provided by its terms. If so cancelled, this policy shall continue in force for the benefit only of the mortgagee for ten days after notice to the mortgagee of such cancellation and shall then cease. The Company shall have the right to cancel this agreement on ten days notice to the mortgagee.

When the Company shall pay the mortgagee any sum for loss under this policy, and shall claim that, as to the mortgagor or owner, no liability therefor existed, the Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the mortgagee to whom such payment shall have been made, under the mortgage debt. In lieu of taking such subrogation, the Company may, at its option, pay to the mortgagee the whole principal due or to grow due on the mortgage, with interest accrued and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities. However, no subrogation shall impair the right of the mortgagee to recover the full amount of said mortgagee's claim.

**20. Recoveries.** In the event the Company has made a payment for loss under the policy and a subsequent recovery is made of the lost or damaged property, the insured shall be entitled to all recoveries in excess of the amount paid by the Company, less only the actual cost of effecting such recoveries.

**21. Loss Clause.** Any loss hereunder shall not reduce the amount of this insurance.

**22. No Benefit To Bailee.** This insurance shall not inure directly or indirectly to the benefit of any carrier or other bailee.

**23. No Control.** This insurance shall not be prejudiced:

(a) by any act or neglect of the owner of any building if the insured is not the owner thereof, or by any act or neglect of any occupant (other than the insured) of any building when such act or neglect of the owner or occupant is not within the control of the insured, or

(b) by failure of the insured to comply with any warranty or condition contained in any endorsement attached to this policy with regard to any portion of the premises over which the insured has no control.

## CONDITIONS APPLICABLE TO SECTION II

1. **Supplementary Payments.** The Company will pay, in addition to the applicable limit of liability:

(a) all expenses incurred by the Company, all costs taxed against the insured in any suit defended by the Company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the Company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the Company's liability thereon;

(b) premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy, and the cost of bail bonds required of the insured because of accident or traffic law violation arising out of the use of any vehicle to which this policy applies, not to exceed $250 per bail bond, but the Company shall have no obligation to apply for or furnish any such bonds;

(c) expenses incurred by the insured for first-aid to others at the time of an accident, for bodily injury to which this policy applies;

(d) reasonable expenses incurred by the insured at the Company's request in assisting the Company in the investigation or defense of any claim or suit, including actual loss of earnings not to exceed $25 per day.

2. **Premium.** Premium designated in this policy as "advance premium" is a deposit premium only which shall be credited to the amount of the earned premium due at the end of the policy period. At the close of each period (or part thereof) terminating with the end of the policy period) designated in the Declarations as the audit period the earned premium shall be computed for such period and, upon notice thereof to the named insured shall become due and payable. If the total earned premium for the policy period is less than the premium previously paid, the Company shall return to the named insured the unearned portion paid by the named insured.

The named insured shall maintain records of such information as is necessary for premium computation and shall send copies of such records to the Company at the end of the policy period and at such times during the policy period as the Company may direct.

3. **Financial Responsibility Laws.** When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, such insurance as is afforded by this policy for bodily injury liability or for property damage liability shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law. The insured agrees to reimburse the Company for any payment made by the Company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph.

4. **Insured's Duties in the Event of Occurrence, Claim or Suit.**

(a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof and the names and addresses of the injured and of available witnesses shall be given by, or for the insured to the Company or any of its authorized agents as soon as practicable.

(b) If claim is made or suit is brought against the insured, the insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

(c) The insured shall cooperate with the Company and, upon the Company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of injury or damage with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

5. **Medical Reports; Proof and Payment of Claim.** As soon as practicable the insured person or someone on his behalf shall give to the Company written proof of claim, under oath if required, and shall, after each request from the Company, execute authorization to enable the Company to obtain medical reports and copies of records. The injured person shall submit to physical examination by physicians selected by the Company

when and as often as the Company may reasonably require. The Company may pay the injured person or any person or organization rendering the services and the payment shall reduce the amount payable hereunder for such injury. Payment hereunder shall not constitute an admission of liability of any person or, except hereunder, of the Company.

6. **Action Against Company.** No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the Company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Company as a party in any action against the insured to determine the insured's liability, nor shall the Company be impleaded by the insured or his legal representative. Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the Company of any of its obligations hereunder.

7. **Other Insurance.** The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the Company's liability under this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the Company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) **Contribution by Equal Shares.** If all of such other valid and collectible insurance provides for contribution by equal shares, the Company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(b) **Contribution by Limits.** If any of such other insurance does not provide for contribution by equal shares, the Company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

8. **Annual Aggregate.** If this policy is issued for a period in excess of one year, any limit of the Company's liability stated in this policy as "aggregate" shall apply separately to each consecutive annual period.

9. **Nuclear Exclusion.**

I. This policy does not apply:

(a) Under any Liability Coverage, to bodily injury or property damage

(1) with respect to which an insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) resulting from the hazardous properties of nuclear material and with respect to which (i) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (ii) the insured is, or had, this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

(b) Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

(c) Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties of nuclear material, if .

(1) the nuclear material (i) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (ii) has been discharged or dispersed therefrom;

(2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(3) the bodily injury or property damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

II. As used in this exclusion :

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; .

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property. .

## DEFINITIONS APPLICABLE TO SECTION II

When used in the provisions applicable to Section II of this policy (including endorsements forming a part hereof):

"automobile" means a land motor vehicle, trailer or semitrailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include mobile equipment;

"bodily injury" means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;

"collapse hazard" includes "structural property damage" as defined herein and property damage to any other property at any time resulting therefrom. "Structural property damage" means the collapse of or structural injury to any building or structure due to (1) grading of land, excavating, borrowing, filling, back-filling, tunneling, pile driving, cofferdam work or caisson work, or (2) moving, shoring, underpinning, raising or demolition of any building or structure or removal or rebuilding of any structural support thereof. The collapse hazard does not include property damage (1) arising out of operations performed for the named insured by independent contractors, or (2) included within the completed operations hazard or the underground property damage hazard, or (3) for which liability is assumed by the insured under an incidental contract;

"completed operations hazard" includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,

(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or

(3) when that portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

The completed operations hazard does not include bodily injury or property damage arising out of

(a) operations in connection with the transportation of property, unless the bodily injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof;

(b) the existence of tools, uninstalled equipment or abandoned or unused materials, or

(c) operations for which the classification stated in the policy or in the company's manual specifies "including completed operations";

"elevator" means any hoisting or lowering device to connect floors or landings, whether or not in service, and all appliances thereof including any car, platform, shaft, hoistway, stairway, runway, power equipment and machinery; but does not include an automobile servicing hoist, or a hoist without a platform outside a building if without mechanical power or if not attached to building walls, or a hod or material hoist used in alteration, construction or demolition operations, or an inclined conveyor used exclusively for carrying property or a dumbwaiter used exclusively for carrying property and having a compartment height not exceeding four feet;

"explosion hazard" includes property damage arising out of blasting or explosion. The explosion hazard does not include property damage (1) arising out of the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment, or (2) arising out of operations performed for the named insured by independent contractors, or (3) included within the completed operations hazard or the underground property damage hazard, or (4) for which liability is assumed by the insured under an incidental contract;

"incidental contract" means any written (1) lease of premises, (2) easement agreement, except in connection with construction or demolition

operations on or adjacent to a railroad, (3) undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality, (4) sidetrack agreement, or (5) elevator maintenance agreement;

"insured" means any person or organization qualifying as an insured in the "Persons Insured" provision of the applicable insurance coverage. The insurance afforded applies separately to each insured against whom claim is made or suit is brought, except with respect to the limits of the company's liability;

"mobile equipment" means a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled, (1) not subject to motor vehicle registration, or (2) maintained for use exclusively on premises owned by or rented to the named insured, including the ways immediately adjoining, or (3) designed for use principally off public roads, or (4) designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills; concrete mixers (other than the mix-in-transit type); graders, scrapers, rollers and other road construction or repair equipment; air compressors, pumps and generators, including spraying, welding and building cleaning equipment and geophysical exploration and well servicing equipment;

"named insured" means the person or organization named in Item 1. of the declarations of this policy;

"named insured's products" means goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, including any container thereof (other than a vehicle), but "named insured's products" shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold;

"occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured;

"policy territory" means:

(1) the United States of America, its territories or possessions, or Canada, or

(2) international waters or air space, provided the bodily injury or property damage does not occur in the course of travel or transportation to or from any other country, state or nation, or

(3) anywhere in the world with respect to damages because of bodily injury or property damage arising out of a product which was sold for use or consumption within the territory described in paragraph (1) above, provided the original suit for such damages is brought within such territory;

"products hazard" includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others;

"property damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period;

"underground property damage hazard" includes underground property damage as defined herein and property damage to any other property at any time resulting therefrom. "Underground property damage" means property damage to wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, borrowing, filling, back-filling or pile driving. The underground property damage hazard does not include property damage (1) arising out of operations performed for the named insured by independent contractors, or (2) included within the completed operations hazard, or (3) for which liability is assumed by the insured under an incidental contract.

## COMPREHENSIVE GENERAL LIABILITY INSURANCE

### I. BODILY INJURY LIABILITY
### PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of

**bodily injury** or

**property damage**

to which this insurance applies, caused by an **occurrence**, and the company shall have the right and duty to defend any suit against the **insured** seeking damages on account of such **bodily injury** or **property damage**, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

**Exclusions**

This insurance does not apply:

(a) to liability assumed by the **insured** under any contract or agreement except an **incidental contract**; but this exclusion does not apply to a warranty of fitness or quality of the **named insured's products** or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner;

(b) to **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of
(1) any **automobile** or aircraft owned or operated by or rented or loaned to any insured, or
(2) any other **automobile** or aircraft operated by any person in the course of his employment by any insured;

but this exclusion does not apply to the parking of an **automobile** on premises owned by, rented to or controlled by the named insured or the ways immediately adjoining, if such **automobile** is not owned by or rented or loaned to any insured;

(c) to **bodily injury** or **property damage** arising out of (1) the ownership, maintenance, operation, use, loading or unloading of any **mobile equipment** while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity or (2) the operation or use of any snowmobile or trailer designed for use therewith;

(d) to **bodily injury** or **property damage** arising out of and in the course of the transportation of **mobile equipment** by an automobile owned or operated by or rented or loaned to any insured;

(e) to **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of
(1) any watercraft owned or operated by or rented or loaned to any **insured**, or
(2) any other watercraft operated by any person in the course of his employment by any insured;

but this exclusion does not apply to watercraft while ashore on premises owned by, rented to or controlled by the **named insured**;

(f) to **bodily injury** or **property damage** arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

(g) to **bodily injury** or **property damage** due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing, with respect to
(1) liability assumed by the **insured** under an **incidental contract**, or
(2) expenses for first aid under the Supplementary Payments provision;

(h) to **bodily injury** or **property damage** for which the **insured** or his indemnitee may be held liable
(1) as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or
(2) if not so engaged, as an owner or lessor of premises used for such purposes,
if such liability is imposed
(i) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, or
(ii) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person;
but part (ii) of this exclusion does not apply with respect to liability of the **insured** or his indemnitee as an owner or lessor described in (2) above;

(i) to any obligation for which the **insured** or any carrier as his insurer may be held liable under any workers' compensation, unemployment compensation or disability benefits law, or under any similar law;

(j) to **bodily injury** to any employee of the **insured** arising out of and in the course of his employment by the **insured** or to any obligation of the **insured** to indemnify another because of damages arising out of such injury; but this exclusion does not apply to liability assumed by the **insured** under an **incidental contract**;

(k) to **property damage** to
(1) property owned or occupied by or rented to the **insured**,
(2) property used by the **insured**, or
(3) property in the care, custody or control of the **insured** or as to which the **insured** is for any purpose exercising physical control;

but parts (2) and (3) of this exclusion do not apply with respect to liability under a written sidetrack agreement and part (3) of this exclusion does not apply with respect to **property damage** (other than to elevators) arising out of the use of an **elevator** at premises owned by, rented to or controlled by the **named insured**;

(l) to **property damage** to premises alienated by the **named insured** arising out of such premises or any part thereof;

(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from
(1) a delay in or lack of performance by or on behalf of the **named insured** of any contract or agreement, or
(2) the failure of the **named insured's products** or work performed by or on behalf of the **named insured** to meet the level of performance, quality, fitness or durability warranted or represented by the **named insured**;
but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the **named insured's products** or work performed by or on behalf of the **named insured** after such products or work have been put to use by any person or organization other than an **insured**;

(n) to **property damage** to the **named insured's products** arising out of such products or any part of such products;

(o) to **property damage** to work performed by or on behalf of the **named insured** arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(p) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the **named insured's products** or work completed by or for the **named insured** or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

(q) to **property damage** included within:
(1) the **explosion** hazard in connection with operations identified in this policy by a classification code number which includes the symbol "x",
(2) the **collapse** hazard in connection with operations identified in this policy by a classification code number which includes the symbol "c",
(3) the **underground property damage** hazard in connection with operations identified in this policy by a classification code number which includes the symbol "u".

### II. PERSONS INSURED

Each of the following is an **insured** under this insurance to the extent set forth below:

(a) if the **named insured** is designated in the declarations as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor, and the spouse of the **named insured** with respect to the conduct of such a business;

(b) if the **named insured** is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(c) if the **named insured** is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such;

(d) any person (other than an employee of the **named insured**) or organization while acting as real estate manager for the **named insured**; and

(e) with respect to the operation, for the purpose of locomotion upon a public highway, of **mobile equipment** registered under any motor vehicle registration law,
(i) an employee of the **named insured** while operating any such equipment in the course of his employment, and
(ii) any other person while operating with the permission of the **named insured** any such equipment registered in the name of the **named insured** and any person or organization legally responsible for such operations, but only if there is no other valid and collectible insurance available, either on a primary or excess basis, to such person or organization;

provided that no person or organization shall be an **insured** under this paragraph (e) with respect to:
(1) **bodily injury** to any fellow employee of such person injured in the course of his employment, or
(2) **property damage** to property owned by, rented to, in charge of or occupied by the **named insured** or the employer of any person described in subparagraph (i);

This insurance does not apply to **bodily injury** or **property damage** arising out of the conduct of any partnership or joint venture of which the **insured** is a partner or member and which is not designated in this policy as a named insured.

(over)

## III. LIMITS OF LIABILITY

regardless of the number of (1) **insureds** under this policy, (2) persons or organizations who sustain **bodily injury or property damage,** or (3) claims made or suits brought on account of **bodily injury or property damage,** the company's liability is limited as follows:

**Bodily Injury** — The total liability of the company for all damages, including damages for care and loss of services, because of **bodily injury** sustained by one or more persons as the result of any one **occurrence** shall not exceed the limit of **bodily injury** liability stated in the schedule as applicable to "each occurrence."

Subject to the above provision respecting "each **occurrence**", the total liability of the company for all damages because of (1) all **bodily injury** included within the **completed operations hazard** and (2) all **bodily injury** included within the **products hazard** shall not exceed the limit of **bodily injury** liability stated in the schedule as "aggregate".

**Property Damage** — The total liability of the company for all damages because of all **property damage** sustained by one or more persons or organizations as the result of any one **occurrence** shall not exceed the limit of **property damage** liability stated in the schedule as applicable to "each **occurrence**".

Subject to the above provision respecting "each **occurrence**", the total liability of the company for all damages because of all **property damage** to which this coverage applies and described in any of the numbered subparagraphs below shall not exceed the limit of **property damage** liability stated in the schedule as "aggregate":

(1) all **property damage** arising out of premises or operations rated on a remuneration basis or contractor's equipment rated on a receipts basis,
including **property damage** for which liability is assumed under any **incidental contract** relating to such premises or operations, but excluding **property damage** included in subparagraph (2) below;

(2) all **property damage** arising out of and occurring in the course of operations performed for the **named insured** by independent contractors and general supervision thereof by the **named insured,** including any such **property damage** for which liability is assumed under any **incidental contract** relating to such operations, but this subparagraph (2) does not include **property damage** arising out of maintenance or repairs at premises owned by or rented to the **named insured** or structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

(3) all **property damage** included within the **products hazard** and all **property damage** included within the **completed operations hazard.**

Such aggregate limit shall apply separately to the **property damage** described in subparagraphs (1), (2) and (3) above, and under subparagraphs (1) and (2), separately with respect to each project away from premises owned by or rented to the **named insured.**

**Bodily Injury and Property Damage** — For the purpose of determining the limit of the company's liability, all **bodily injury** and **property damage** arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one **occurrence.**

## IV. POLICY TERRITORY

This insurance applies only to **bodily injury or property damage** which occurs within the **policy territory.**

MMI-202B

# *EXHIBIT 3*

# FACULTATIVE REINSURANCE CERTIFICATE



**Kemper Reinsurance Company**
**Long Grove, IL 60049**
**Telephone: 312/540-2600**
**TELEX 28 2501**

Certificate Number  41465-2-00-79

Prior Certificate Number  New

DOES HEREBY REINSURE:

**1. Name and Address of Reinsured**  Michigan Mutual Insurance Company – Detroit, MI
(herein called the COMPANY) with respect to the COMPANY'S policy hereinafter described, in consideration of the payment
of the premium and subject to the terms, conditions and amount of liability set forth herein as follows:

**2. Name of Insured**  Armstrong Machine Works Etal
Address  816 Maple Street, Three Rivers, MI  49093
Policy Number  SRF-29-0-548474  Policy Period  From  1-1-79  To  1-1-80

**3. Period of this Certificate**  From  1-1-79  To  1-1-80

**4. Schedule of Reinsurance Afforded**  Date of Acceptance  1-4-79

| | |
|---|---|
| Section I<br>TYPE OF<br>INSURANCE | Umbrella Liability |
| Section II<br>POLICY<br>LIMITS | $4,000,000 each occ/agg. X/S Underlying |
| Section III<br>COMPANY<br>RETENTION | $500,000 each occ/agg. P/O $1,000,000 each occ/agg. X/S Underlying |
| Section IV<br>REINSURANCE<br>ACCEPTED | $500,000 each occ/agg. P/O $1,000,000 each occ/agg. X/S $1,000,000 each occ/agg. X/S Underlying |

**5. Reinsurance Premium Computation**

Installment Premium

☒ Adjustable Premium
@ .0261 per $100 of Receipts

| Due Date | Amount Due |
|---|---|
| 1-1-79 | $6000.00 |
| | |

☐ Non-adjustable Premium

Total Premium  $6000.00

**6. Intermediary**  Independence Intermediaries, Inc. – New York, NY

IN WITNESS WHEREOF, the Reinsurer has caused this Certificate to be signed by an executive officer.

Name  *George L. Messenger*

Title  Vice President

The Provisions and Stipulations of the Reinsurance Clause on the Reverse Side Hereof are Hereby Made a
Part of This Certificate.

D 2804  9-78  5M

Printed in U.S.A.

# THIS CERTIFICATE IS SUBJECT TO THE FOLLOWING CONDITIONS

**A**

**RETENTION AND APPLICATION OF LIABILITY.** The company warrants to retain for its own account or that of its treaty reinsurer(s) the amount of liability specified in Item 4, Section III of this Certificate, unless otherwise declared to the Reinsurer. The liability of the Reinsurer specified in Item 4, Section IV of this Certificate shall follow that of the Company, and except as otherwise specifically provided herein, shall be subject in all respects to all the terms and conditions of the Company's policy.

**B**

**COOPERATION OF COMPANY.** The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto which in any manner affect this Certificate, and shall make available for inspection and place at the disposal of the Reinsurer at reasonable times any of its records relating to this reinsurance or claims in connection therewith.

**C**

**NOTICE OF OCCURRENCE.** Prompt notice shall be given the Reinsurer by the Company of any occurrence or accident which appears likely to involve this reinsurance.

**D**

**DEFENSE OF CLAIMS OR SUITS.** While the Reinsurer does not undertake to investigate or defend claims or suits, it shall nevertheless have the right and be given the opportunity to associate with the Company and its representatives at its own expense in the defense and control of any claim, suit or proceeding involving this reinsurance, with the full cooperation of the Company.

**E**

**LOSS PAYABLE.** All claims involving this reinsurance, when settled by the Company, shall be binding on the Reinsurer, which shall be bound to pay its proportion of such settlements promptly following receipt of proof of loss. In addition the Reinsurer shall be bound to pay its proportion of expenses, other than Company salaries and office expenses, incurred by the Company in the investigation and settlement of claims or suits, as follows:

**1.** With respect to reinsurance provided on an excess of loss basis, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment.

**2.** With respect to reinsurance provided on a pro rata or quota share basis, in the ratio that the Reinsurer's limit of liability bears to the Company's gross limit of liability.

The Reinsurer will also pay its proportion of court costs and interest on any judgment or award, provided its prior consent to trial court proceedings has been obtained.

**F**

The Reinsurance hereunder is subject to the standard Nuclear Incident Exclusion Clause(s) and standard War Exclusion Clause(s) for the coverage provided.

**G**

**SALVAGE.** The Reinsurer will be paid or credited by the Company with its proportion of salvage, i.e., reimbursement obtained or recovery made by the Company less the actual cost (excluding Company salaries and office expenses) of obtaining such reimbursement or making such recovery. If the reinsurance afforded by this Certificate is on the excess of loss basis, salvage shall be applied in the inverse order in which liability attaches.

**H**

**PREMIUM TAXES.** The Company will be liable for all taxes on premiums ceded to the Reinsurer under this Certificate, if the premium for this Certificate is on a net basis.

**I**

**INSOLVENCY.** In the event of the insolvency of the Company, reinsurance under this Agreement shall be payable by the Reinsurer on the basis of the liability of the Company under the Reinsurance Agreement, without diminution because of such insolvency, directly to the Company or its liquidator, receiver or statutory successor, except as otherwise specified in the statues of any state having jurisdiction of the insolvency proceedings. The reinsurer shall be given written notice of the pendency of each claim which may involve the reinsurance afforded by this Agreement within a reasonable time after such claim is filed in the insolvency proceeding. It shall have the right to investigate each such claim and interpose, at its own expense, in the proceeding where the claim is to be adjudicated, any defense which it may deem available to the Company or its liquidator, receiver or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer.

**J**

**CANCELLATION.** Cancellation of the policy of the Company shall constitute automatic cancellation of this Certificate. This Certificate may also be cancelled on a pro rata basis by either the Company or the Reinsurer by mailing written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective.

**K**

**OFFSET CLAUSE.** The Reinsurer may offset any balance(s), whether on account of premiums, commissions, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this certificate of reinsurance or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer, whether acting as assuming reinsurer or as ceding company.

**L**

**NON-CONCURRENT.** The reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy other than those specifically set forth in Item 4, Section I. The retention of the Company and liability of the Reinsurer shall be determined as though the Company's policy applied only to the hazards or risks of loss or damage specifically described in Item 4, Section I.

**M**

If the reinsurance hereunder attaches prior to the date of acceptance, the Company warrants that there are no known or reported losses which might be recoverable under this Certificate as of the date this reinsurance is accepted.

**N**

Except as provided by the insolvency clause and any amendments thereto referred to in paragraph I, the obligations under this Certificate shall run to the Company and the Reinsurer shall have no obligation to the original insured or anyone claiming under the policy(ies) reinsured.

The terms of this Certificate shall not be waived or changed except by endorsement issued to form a part hereof, executed by a duly authorized representative of the Reinsurer.

KEMPER REINSURANCE COMPANY

It is hereby understood and agreed that Section III,
Company Retention is amended to read:

$50,000 each occ./agg. P/O $1,000,000 each occ./agg.
X/S underlying



**All other terms and conditions of the Certificate remain unchanged.**

**Attached to and forming part of Certificate Number** 41465-2-00-79

**REINSURED:** Michigan Mutual Insurance Company

**INSURED:** Armstrong Machine Works, Etal

**ENDORSEMENT NO.:** 1

**ENDORSEMENT EFFECTIVE DATE:** January 1, 1979

Authorized Signature

FRU-2

# *EXHIBIT 4*

**Kemper Reinsurance Company**
Long Grove, IL 60049
Telephone: 312/540-2600
TELEX 28 2501

**Facultative
Reinsurance
Certificate**



Kemper Reinsurance Company

DOES HEREBY REINSURE:

Certificate Number  **41465-2-00-80**

Prior Certificate Number  **41465-2-00-79**

1. Name and Address of Reinsured  **Michigan Mutual Insurance Company - Detroit, Michigan**
(herein called the COMPANY) with respect to the COMPANY'S policy hereinafter described, in consideration of the payment
of the premium and subject to the terms, conditions and amount of liability set forth herein as follows:

2. Name of Insured  **Armstrong Machine Works, Etal (See Endorsement #1)**
Address  **816 Maple Street, Three Rivers, Michigan  49093**
Policy Number **SRFMG-29-4-48147-1** Policy Period  From **1/1/80**  To **1/1/81**

3. Period of this Certificate  From **1/1/80**  To **1/1/81**

4. Schedule of Reinsurance Afforded  Date of Acceptance  **1/1/80**

| | |
|---|---|
| Section I<br>TYPE OF<br>INSURANCE | **Umbrella Liability** |
| Section II<br>POLICY<br>LIMITS | **$10,000,000 each occ/agg. X/S Underlying** |
| Section III<br>COMPANY<br>RETENTION | **$50,000 each occ/agg. P/O $1,000,000 each occ/agg. X/S Underlying** |
| Section IV<br>REINSURANCE<br>ACCEPTED | **$1,000,000 each occ/agg. P/O $4,000,000 each occ/agg. X/S $1,000,000 each occ/agg. X/S Underlying** |

5. Reinsurance Premium Computation

☒ Adjustable Premium
**@.009135 per $100 Receipts**

☐ Non-adjustable Premium

| Installment Premium<br>Due Date | Amount Due |
|---|---|
| **1/1/80** | **$2,375.00** |
| Total Premium | **$2,375.00** |

NOTED
MAR 20 1980
L. L. WALKER

6. Intermediary **Independence Intermediaries, Inc.**

IN WITNESS WHEREOF, the Reinsurer has caused this Certificate to be signed by an executive officer.

Name  *George L. Messenger*

Title  **Senior Vice President**

The Provisions and Stipulations of the Reinsurance Clause on the Reverse Side Hereof are Hereby Made a
Part of This Certificate.

D 2804  10-79  10M

Printed in U.S.A.

# THIS CERTIFICATE IS SUBJECT TO THE FOLLOWING CONDITIONS

**A**

**RETENTION AND APPLICATION OF LIABILITY.** The company warrants to retain for its own account or that of its treaty reinsurer(s) the amount of liability specified in Item 4, Section III of this Certificate, unless otherwise declared to the Reinsurer. The liability of the Reinsurer specified in Item 4, Section IV of this Certificate shall follow that of the Company, and except as otherwise specifically provided herein, shall be subject in all respects to all the terms and conditions of the Company's policy.

**B**

**COOPERATION OF COMPANY.** The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto which in any manner affect this Certificate, and shall make available for inspection and place at the disposal of the Reinsurer at reasonable times any of its records relating to this reinsurance or claims in connection therewith.

**C**

**NOTICE OF OCCURRENCE.** Prompt notice shall be given the Reinsurer by the Company of any occurrence or accident which appears likely to involve this reinsurance.

**D**

**DEFENSE OF CLAIMS OR SUITS.** While the Reinsurer does not undertake to investigate or defend claims or suits, it shall nevertheless have the right and be given the opportunity to associate with the Company and its representatives at its own expense in the defense and control of any claim, suit or proceeding involving this reinsurance, with the full cooperation of the Company.

**E**

**LOSS PAYABLE.** All claims involving this reinsurance, when settled by the Company, shall be binding on the Reinsurer, which shall be bound to pay its proportion of such settlements promptly following receipt of proof of loss. In addition the Reinsurer shall be bound to pay its proportion of expenses, other than Company salaries and office expenses, incurred by the Company in the investigation and settlement of claims or suits, as follows:

**1.** With respect to reinsurance provided on an excess of loss basis, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment.

**2.** With respect to reinsurance provided on a pro rata or quota share basis, in the ratio that the Reinsurer's limit of liability bears to the Company's gross limit of liability.

The Reinsurer will also pay its proportion of court costs and interest on any judgment or award, provided its prior consent to trial court proceedings has been obtained.

**F**

The Reinsurance hereunder is subject to the standard Nuclear Incident Exclusion Clause(s) and standard War Exclusion Clause(s) for the coverage provided.

**G**

**SALVAGE.** The Reinsurer will be paid or credited by the Company with its proportion of salvage, i.e., reimbursement obtained or recovery made by the Company less the actual cost (excluding Company salaries and office expenses) of obtaining such reimbursement or making such recovery. If the reinsurance afforded by this Certificate is on the excess of loss basis, salvage shall be applied in the inverse order in which liability attaches.

**H**

**PREMIUM TAXES.** The Company will be liable for all taxes on premiums ceded to the Reinsurer under this Certificate, if the premium for this Certificate is on a net basis.

**I**

**INSOLVENCY.** In the event of the insolvency of the Company, reinsurance under this Agreement shall be payable by the Reinsurer on the basis of the liability of the Company under the Reinsurance Agreement, without diminution because of such insolvency, directly to the Company or its liquidator, receiver or statutory successor, except as otherwise specified in the statues of any state having jurisdiction of the insolvency proceedings. The reinsurer shall be given written notice of the pendency of each claim which may involve the reinsurance afforded by this Agreement within a reasonable time after such claim is filed in the insolvency proceeding. It shall have the right to investigate each such claim and interpose, at its own expense, in the proceeding where the claim is to be adjudicated, any defense which it may deem available to the Company or its liquidator, receiver or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer.

**J**

**CANCELLATION.** Cancellation of the policy of the Company shall constitute automatic cancellation of this Certificate. This Certificate may also be cancelled on a pro rata basis by either the Company or the Reinsurer by mailing written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective.

**K**

**OFFSET CLAUSE.** The Reinsurer may offset any balance(s), whether on account of premiums, commissions, claims, losses, adjustment expense, salvage or any other amount(s) due from one party to the other under this certificate of reinsurance or under any other agreement heretofore or hereafter entered into between the Company and the Reinsurer, whether acting as assuming reinsurer or as ceding company.

**L**

**NON-CONCURRENT.** The reinsurance provided does not apply to any hazards or risks of loss or damage covered under the Company's policy other than those specifically set forth in Item 4, Section I. The retention of the Company and liability of the Reinsurer shall be determined as though the Company's policy applied only to the hazards or risks of loss or damage specifically described in Item 4, Section I.

**M**

If the reinsurance hereunder attaches prior to the date of acceptance, the Company warrants that there are no known or reported losses which might be recoverable under this Certificate as of the date this reinsurance is accepted.

**N**

Except as provided by the insolvency clause and any amendments thereto referred to in paragraph I, the obligations under this Certificate shall run to the Company and the Reinsurer and shall have no obligation to the original insured or anyone claiming under the policy(ies) reinsured.

The terms of this Certificate shall not be waived or changed except by endorsement issued to form a part hereof, executed by a duly authorized representative of the Reinsurer.

KEMPER REINSURANCE COMPANY

It is understood and agreed that this Certificate is amended to read as follows:

Name of Insured:

Armstrong Machine Works, Armstrong Video Productions, A Division of Armstrong Machine Works.

All other terms and conditions of the Certificate remain unchanged.

Attached to and forming part of Certificate Number 41465-2-00-80

REINSURED:      Michigan Mutual Insurance Company

INSURED:      Armstrong Machine Works, Etal

ENDORSEMENT NO.:      1

ENDORSEMENT EFFECTIVE DATE:      1/1/80

*George L. Messenger*

Authorized Signature

FRU-2

# *EXHIBIT 5*

CERTIFICATE OF CASUALTY FACULTATIVE REINSURANCE

 **NORTH AMERICAN REINSURANCE CORPORATION**

(herein called the Reinsurer)

| | |
|---|---|
| | 0946990 |
| | CERTIFICATE NO. |
| | New |
| | PRIOR CERTIFICATE NO. |

**HOME OFFICE • NEW YORK, N.Y.**

ATTN: Mr. Norris Foreman

DOES HEREBY REINSURE: Michigan Mutual Insurance Co. c/o Independence Intermediaries, Inc.

127 John Street, New York, New York 10038
(NAME AND ADDRESS OF CEDING COMPANY)

(herein called the COMPANY) with respect to the COMPANY'S policy hereinafter described, in consideration of the payment of the premium and subject to the terms, conditions and amount of liability set forth herein as follows:

NAME OF INSURED ARMSTRONG MACHINE WORKS, ETAL.

ADDRESS 816 Maple Street, Three Rivers, Michigan ZIP 49093

COMPANY'S POLICY NO. SRFMG29-4-48147-1 REINSURANCE PERIOD 1/1/80 1/1/81
FROM                    TO

DETAILS OF REINSURANCE AFFORDED:

| TYPE OF INSURANCE ITEM 1 | POLICY LIMITS AND APPLICATION ITEM 2 | COMPANY RETENTION ITEM 3 | REINSURANCE ACCEPTED ITEM 4 | BASIS OF ACCEPTANCE ITEM 5 |
|---|---|---|---|---|
| Umbrella Liability | $10,000,000. each occurrence and in the aggregate excess of Underlying Limits of Primary Ins. or $10,000. S.I.R. | 5% of first $1,000,000. Net & Treaty | $1,000,000. part of $4,000,000. excess of $1,000,000. & $1,000,000. part of $5,000,000. excess of $5,000,000. | Excess of Loss |

| | PREMIUM DUE DATE | PREMIUM AMOUNT | |
|---|---|---|---|
| ☐ FIXED CHARGE PREMIUM | 1/1/80 | $3,375.00 | Minimum & Deposit |
| ☒ AUDIT PREMIUM | | | |

AUDIT FREQUENCY Upon Expiration

COMPUTED AS FOLLOWS:
Adjustable at a Rate of .0129 Per
$100. of Receipts.

TOTAL PREMIUM $3,375.00 Minimum & Deposit     COMMISSION 00.0% %

NOTED
MAR 20 1980
L WALKER

MINIMUM PREMIUM: For Reinsurance Period $

| New York, New York | January 31, 1980 | FOR CERTIFICATE $ /rg |
|---|---|---|
| ISSUED AT | DATE | COUNTERSIGNED BY |

FORM NO. 1 M.B.F. 10M 8/77 (REV. 4)

ORIGINAL

This Certificate is made and entered into by and between the Company and the Reinsurer, under ECF No. 1. The liability assumed under the policy set forth on the face of this Certificate subject to the following terms and conditions:

A. APPLICATION OF LIABILITY. The liability of the Reinsurer shall follow the terms and conditions of the Company's policy furnished to the Reinsurer at the effective date of this Reinsurance Certificate, unless otherwise specifically provided herein by endorsement made a part of this Certificate. Any change in the terms and conditions of the Company's policy subsequent to the effective date of this Reinsurance Certificate shall not increase or extend the Reinsurer's liability hereunder unless such change is made a part of this Certificate by endorsement issued by the Reinsurer.

B. RETENTION OF THE COMPANY. This reinsurance is accepted in reliance on the Company's not reducing its net interest in original policy loss or liability as determined by the amount specified in Item 3. (Company Retention). Should the Company Retention be reduced by reinsurance or otherwise without notice to the Reinsurer (except as the Company Retention may be covered by non-specific excess of loss catastrophe reinsurance applying to more than one of the Company's policies in a single event), the Reinsurer's liability for loss otherwise fully collectible hereunder shall be determined in accordance with the following:

(1) If this reinsurance is on an excess of loss basis, the Reinsurer shall in no event be liable for a larger proportion of any loss otherwise fully collectible hereunder than the percentage which the actual amount of the Company's Retention at the time of loss bears to the amount stipulated in Item 3.; and there shall be no return premium to the Company on account of any such reduction in the Reinsurer's liability for loss.

(2) If this reinsurance is on a pro rata (or quota share) basis, THE COMPANY WARRANTS THAT IT WILL RETAIN as the Company Retention the amount stipulated in Item 3. (except as noted therein). If at the time of any loss the Company's actual retention shall be less than the amount stipulated in Item 3., reinsurance hereunder shall be void either from inception or, when later, the date on which the reduction took place, and the Company and the Reinsurer shall each return to the other any remittances for loss or premium made following such date.

C. COOPERATION OF THE COMPANY. The Company shall furnish the Reinsurer with a copy of its policy and all endorsements thereto which in any manner affect this Certificate, and shall make available for inspection and place at the disposal of the Reinsurer at reasonable times, at the offices of the Company during normal business hours, any of its records relating to this reinsurance or claims in connection therewith.

D. NOTICE OF OCCURRENCE. Prompt notice shall be given the Reinsurer by the Company of any occurrence or accident which appears likely to involve loss under this reinsurance, whether the Company considers it has an adequate defense or not.

E. DEFENSE OF CLAIMS OR SUITS. While the Reinsurer does not undertake to investigate or defend claims or suits, it shall nevertheless have the right and be given the opportunity to associate with the Company and its representatives at its own expense in the defense and control of any claim, suit or proceeding involving this reinsurance, with full cooperation of the Company. If the reinsurance hereunder is for the total policy amount, the Reinsurer shall have the right, but not the obligation, to defend or pursue any suit or claim on the Company's behalf and in its name.

F. LOSS PAYABLE. All Insurance Policy claims involving this reinsurance, when settled by the Company, shall be binding on the Reinsurer, which shall be bound to pay its proportion of such settlements promptly following receipt of proof of loss in the following manner:

(1) If this reinsurance is on an excess of loss basis, the amount of the Reinsurer's liability for loss hereunder shall be its indicated proportion of the excess amount, if any, by which ultimate loss to the policy exceeds the amount or amounts in excess of which this reinsurance attaches, after

first having deducted all recoveries or recoverables (collectible or not), from any source except those from such portions of other excess of loss reinsurances which do not overlap or duplicate this coverage.

(2) If this reinsurance is on a pro rata (or quota share) basis, the amount of Reinsurer's liability for each loss shall be in the proportion that the sum reinsured hereby bears to the total sum insured by the policy at the time this Certificate becomes effective, or at the time of loss, whichever proportion is less (unless otherwise endorsed hereto).

In addition, the Reinsurer will pay its share of Loss Adjustment Expenses (excluding Company salaries and office expenses) incurred by the Company in the investigation and settlement of claims and suits involving the policy hereby reinsured. The Reinsurer's share shall be in the ratio which its loss bears to the gross loss of the Company under the policy reinsured. Unless otherwise agreed to prior to settlement, if the Company has issued more than one policy covering the same claim or suit, all such expenses as are covered by the terms of those policies or which would have been allocable to such policies under guiding principles or industry practices intended to resolve duplicate or overlapping coverage between policies of different insurers, shall first be deducted from gross expenses to the Company before calculating the Reinsurer's liability for such expenses hereunder. The Reinsurer will also pay such proportion of court costs and interest on any judgment or award fixing the amount of the Company's insurance liability under the policy reinsured, provided the Reinsurer's prior consent to such trial proceedings has been obtained.

G. SALVAGE. The Reinsurer will be paid or credited by the Company with its proportion of salvage, i.e., reimbursement obtained or recovery made by the Company. If the reinsurance afforded by this Certificate is on an excess of loss basis, salvage shall be applied in the inverse order in which liability attaches. All costs (other than Company salaries and office expenses) of such salvage or reimbursement shall be borne by the Company and the Reinsurer in proportion to the ultimate benefits accruing to each.

H. TAXES. The Company will be liable for all taxes (except income taxes) on business ceded to the Reinsurer under this Certificate.

I. INSOLVENCY. In the event of the insolvency of the Company, reinsurance under this Certificate shall be payable by the Reinsurer on the basis of the liability of the Company without diminution because of such insolvency, directly to the Company or its liquidator, receiver or statutory successor, except as otherwise provided by law. The Reinsurer shall be given written notice of the pendency of each claim which may involve the reinsurance afforded by this Certificate within a reasonable time after such claim is filed in the insolvency proceeding. It shall have the right to investigate each such claim and interpose, at its own expense, in the proceeding where the claim is to be adjudicated, any defense which it may deem available to the Company or its liquidator, receiver, or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, subject to court approval, against the insolvent Company as part of the expense of liquidation to the extent of a proportionate share of the benefit which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer.

J. CANCELLATION. Cancellation of the policy of the Company shall constitute automatic cancellation of this Certificate. This Certificate may also be cancelled by either the Company or the Reinsurer by mailing written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. If the Company policy is cancelled, the return premium hereunder shall be proportional to the original premium returned by the Company, subject to the stipulated Certificate minimum premium. If the Reinsurer cancels, the return premium shall be on a pro rata basis with the Certificate minimum premium waived.

In Witness Whereof, the Reinsurer has caused this Certificate to be signed by its President at New York, N.Y. and countersigned by a duly authorized representative of the Reinsurer.

PRESIDENT



## NORTH AMERICAN REINSURANCE CORPORATION

(herein called the Reinsurer)

**HOME OFFICE** ● **NEW YORK, N.Y.**

| | |
|---|---|
| CERTIFICATE NO. | 0946990 |
| ENDORSEMENT NO. | 1 |

COMPANY'S POLICY NUMBER   SRFMG29-4-48147-1    ENDORSEMENT EFFECTIVE   January 1, 1980

ISSUED TO:       Michigan Mutual Ins. Co. c/o Independence Intermediaries, Inc., 127
                 John Street, New York, New York   10038
INSURED'S NAME   ARMSTRONG MACHINE WORKS, ETAL.

| PREMIUM DUE DATE | ADDITIONAL OR RETURN (-) PREMIUM | AMENDED FUTURE INSTALLMENTS | COMMISSION |
|---|---|---|---|
| | | | _____ % |

TOTAL ADJUSTMENT

DESCRIPTION:            <u>INTERMEDIARY CLAUSE</u>

"THE INTERMEDIARY DESIGNATED BELOW IS RECOGNIZED AS THE
INTERMEDIARY NEGOTIATING THIS REINSURANCE.  PAYMENTS MADE BY THE
CEDING COMPANY TO SUCH INTERMEDIARY SHALL BE DEEMED TO BE
PAYMENT TO THE REINSURER.  PAYMENTS MADE BY THE REINSURER TO THE
INTERMEDIARY SHALL CONSTITUTE PAYMENT TO THE CEDING COMPANY ONLY
TO THE EXTENT THAT SUCH PAYMENTS ARE ACTUALLY RECEIVED BY THE
CEDING COMPANY."

INTERMEDIARY:    <u>Independence Intermediaries, Incorporated</u>

<u>1/31/80, N.Y,N.Y.</u>                   _____
DATE OF ISSUE                      COUNTERSIGNED BY

*Henry T. Brosnan*

PRESIDENT

All other terms and conditions of this policy remain unchanged.
IN WITNESS WHEREOF, the NORTH AMERICAN REINSURANCE CORPORATION has caused this endorsement to be signed by its
President and a duly authorized representative.

6-10M B&H 6-74

ORIGINAL