UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERISURE MUTUAL
INSURANCE COMPANY,

        Plaintiff,                          Case No. 22-cv-12298

v.                                    HON. MARK A. GOLDSMITH

SWISS REINSURANCE
AMERICA CORPORATION,

        Defendant.

_____/

## OPINION & ORDER
### (1) DENYING PLAINTIFF AMERISURE MUTUAL INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT (Dkt. 47) AND (2) GRANTING DEFENDANT SWISS REINSURANCE AMERICA CORPORATION'S MOTION FOR SUMMARY JUDGMENT (Dkt. 48)

This action for declaratory judgment was brought by Plaintiff Amerisure Mutual Insurance Company to determine whether it is entitled to reinsurance from Defendant Swiss Reinsurance America Corporation (Swiss Re) for defense costs Amerisure paid on behalf of an insured, Armstrong International Inc., under umbrella policies issued by Amerisure. Amerisure seeks a declaratory judgment stating that these umbrella policies required it to pay Armstrong's defense costs in addition to policy limits, as opposed to within policy limits, and that Swiss Re is, therefore, responsible for those defense costs under the reinsurance policies.

Both parties have moved for summary judgment (Dkts. 47, 48).[1] For the reasons that follow, the Court grants the motion for summary judgment filed by Swiss Re (Dkt. 48) and denies the motion for summary judgment filed by Amerisure (Dkt. 47).

_____

[1] Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to

# I.  BACKGROUND

The following relevant facts are undisputed.

## A.      The Policies

At the center of this lawsuit are primary and umbrella insurance policies that Amerisure issued to Armstrong beginning in 1979.  Amerisure Statement of Mat. Facts (SOMF) ¶ 2 (Dkt. 47); SR Statement of Mat. Facts (SOMF) ¶ 1 (Dkt. 48).  Specifically at issue in this case are two umbrella policies: (i) policy SRF29-0-548474, with a limit of $4,000,000, effective January 1, 1979 to January 1, 1980; and (ii) policy SRFMG29-4-48147, with a limit of $10,000,000, effective January 1, 1980 to January 1, 1981.  SR SOMF ¶ 1; Amerisure Resp. at 3; 1979 Umbrella Policy (Dkt. 48-4); 1980 Umbrella Policy (Dkt. 48-5).

Swiss Re, through two predecessor companies, reinsured portions of the umbrella policies under facultative reinsurance certificates.  Amerisure SOMF ¶ 6; SR SOMF ¶¶ 4–5; Facultative Reinsurance Certificates (Dkts. 48-9, 48-10, 48-11).  Amerisure contends—and Swiss Re does not dispute—that, under the facultative reinsurance certificates, Swiss Re's reinsurance liability follows Amerisure's liability to Armstrong.  Amerisure SOMF ¶ 12.

While covered by Amerisure's policies, Armstrong was sued by individuals alleging bodily injury as a result of exposure to asbestos in products that Armstrong manufactured or distributed. SR SOMF ¶ 6; Richards Dep. at 94:7–19 (Dkt. 48-6).  While Amerisure initially paid Armstrong's defense costs under the primary policies, those policies were eventually exhausted.  Amerisure SOMF ¶ 10; SR SOMF ¶ 8; Richards Dep. at 58:21–59:8; 95:8–10.  Amerisure then began paying Armstrong's defense costs under the umbrella policies.  Amerisure SOMF ¶ 11.  Instead of paying

---

the motions for summary judgment, the briefing includes Amerisure's response (Dkt. 53) and reply (Dkt. 64) briefs and Swiss Re's response (Dkt. 54) and reply (Dkt. 62) briefs.

Armstrong's defense costs within the umbrella policy limits, Amerisure paid them <u>in addition</u> to the policy limits.  Amerisure SOMF ¶ 11.

Amerisure contacted Swiss Re, seeking reinsurance for the umbrella policies under the facultative reinsurance certificates.  SR SOMF ¶ 21; Report to Swiss Re (Dkt. 48-13).  Swiss Re paid $3,500,000 in reinsurance—the amount of the policy limits.  SR SOMF ¶ 21; Coleman Aff. ¶¶ 3–5 (Dkt. 48-14).  Swiss Re declined to pay reinsurance on defense costs Amerisure paid outside of the limits of its umbrella policies.  SR SOMF ¶ 21.

### B.    The Allstate Arbitration

In 2019, Amerisure engaged in arbitration with Allstate, another one of its reinsurers, regarding a dispute over Allstate's reinsurance of umbrella policies containing the same language that is at issue in this case.  SR SOMF ¶¶ 23–24.  The arbitration panel's award was confirmed the following year by the United States District Court for the Northern District of Illinois, which noted that "the crux of the dispute was . . . why Amerisure seemed to be paying defense costs in addition to—rather than within—policy limits and whether that practice exceeded Amerisure's obligations under the reinsured umbrella policies."  <u>Allstate Ins. Co. v. Amerisure Mut. Ins. Co.</u>, No. 19-cv-4341, 2020 WL 1445615, at *5 (N.D. Ill. Mar. 25, 2020).

As stated by the Northern District of Illinois, the arbitration panel found that "the umbrella policies did not pay defense costs in addition to limits when their coverage was triggered by the exhaustion of underlying primary policies"; under the policies, defense costs were only to be paid outside of limits where the claims were "not covered" by the primary policies.  <u>Id.</u>  The panel clarified that "'not covered' did not mean uncollectible due to exhaustion of the primary policy; it meant outside the range of risks that the primary policies covered."  <u>Id.</u> at *2.  Because it found that Amerisure's payment of defense costs was not required under the umbrella policies, the panel

found that Allstate only had to reinsure Amerisure for defense costs paid within policy limits.  Id. at *5.

## II.  ANALYSIS[2]

Amerisure argues that two provisions in the umbrella policies—the "Limit of Liability" provision and the "Defense Endorsement" provision—required Amerisure's payment of Armstrong's defense costs in addition to policy limits.  It further argues that, because the facultative reinsurance certificates require Swiss Re to provide reinsurance for everything Amerisure had to pay pursuant to the umbrella policies, Swiss Re must pay Amerisure additional reinsurance to cover the defense costs Amerisure paid, including the costs paid outside of the policies' limits.

In addition to refuting Amerisure's interpretation of the umbrella policies, Swiss Re argues that Amerisure should be collaterally estopped from arguing that the umbrella policies required it to pay defense costs in addition to limits, as the issue was previously decided in the 2019 arbitration with Allstate and confirmed by a federal district court in 2020.

Because it is a threshold issue, the Court will first discuss what law it should apply in determining the preclusive effect of the Allstate arbitration.  The Court will then evaluate the doctrine of collateral estoppel as applied to Amerisure's claim.  Because the Court finds that

---

[2] In assessing whether a party is entitled to summary judgment, the Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007).  A court will grant a motion for summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can survive summary judgment only by coming forward with evidence showing there is a genuine issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1985).

Amerisure is collaterally estopped from bringing this action, it will not address the parties' policy interpretation arguments.

### A.      Choice of Law

At the outset, there is some discussion in the briefing by both parties regarding which substantive law to apply when deciding the issue of collateral estoppel.  Amerisure conducts its primary analysis under Michigan law, but also offers some analysis under federal and Illinois law before concluding that the issue of choice of law "is not of tremendous relevance, since both federal and Illinois law of collateral estoppel are very similar to Michigan's."  Amerisure Resp. at 26–27.  Swiss Re agrees: "Although federal law on collateral estoppel is sometimes stated slightly differently than Michigan law describes that doctrine, the substance is the same."  SR Reply at 9 n.10.

Whether to apply federal or Michigan law to evaluate the preclusive effect of an arbitration proceeding is "less than clear."  W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc., 700 F. App'x 484, 489–490 (6th Cir. 2017); see also Tankersley v. Lynch, No. 11-12847, 2012 WL 683384, at *6 (E.D. Mich. Mar. 2, 2012) ("The source of the law that governs the preclusion consequences of an arbitration award has not been much developed.") (punctuation modified). Federal courts apply federal law in determining the preclusive effect of a prior federal judgment; they apply state law when determining the preclusive effect of a prior state court judgment. Hamilton's Bogarts, Inc. v. Michigan, 501 F.3d 644, 650 (6th Cir. 2007) But neither of these rules directly applies to the situation at hand.

Because the parties rely on both Michigan and federal law, and because Michigan law and federal law on collateral estoppel lead to the same result in this case, the Court will evaluate the preclusive effect of the Allstate arbitration using both sources of law.  See Tankersley, 2012 WL

683384, at *6 ("Fortunately, the Court need not conclusively resolve this question because there is little difference between the Michigan and federal formulations of the collateral estoppel doctrine.").

Under Michigan law, courts apply collateral estoppel to prevent parties from raising an issue litigated in a prior proceeding where the following three elements are satisfied:  (i) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (ii) the same parties must have had a full and fair opportunity to litigate the issue; and (iii) there must be mutuality of estoppel.  Monat v. State Farms Ins. Co., 677 N.W.2d 843, 845–856 (Mich. 2004).  For the first requirement to be satisfied, the issue in the second proceeding must be identical to that determined in the prior action.  W.J. O'Neil Co., 700 F. App'x at 490 (citing City of Detroit v. Qualls, 454 N.W.2d 374, 383 (Mich. 1990))

Under federal law, the elements, while stated differently, are substantially the same for purposes of this litigation:

> (1) [T]he issue in the subsequent litigation is identical to that resolved in the earlier litigation, (2) the issue was actually litigated and decided in the prior action, (3) the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation, (4) the party to be estopped was a party to the prior litigation (or in privity with such a party), and (5) the party to be estopped had a full and fair opportunity to litigate the issue.

Hammer v. I.N.S., 195 F.3d 836, 840 (6th Cir. 1999). [3]

The Court proceeds to analyze the collateral estoppel issue utilizing both Michigan and federal law.

---

[3] There is one difference between the two bodies of law.  As explained below, Michigan law requires mutuality of estoppel  for offensive use of collateral estoppel, while federal law has no mutuality requirement for either offensive or defensive use.  Because the use here is defensive, this difference is immaterial.

**B.      Elements of Collateral Estoppel**

**1.      Prior Final Determination of an Identical Issue**

The arbitration resulted in a final determination on the question of whether the umbrella policies issued by Amerisure required Amerisure to pay defense costs in addition to limits.  The federal district court that confirmed the arbitration award noted that "the crux of the dispute was . . . why Amerisure seemed to be paying defense costs in addition to—rather than within—policy limits and whether that practice exceeded Amerisure's obligations under the reinsured umbrella policies."  Allstate Ins. Co., 2020 WL 1445615, at *5.  The parties do not contest that the same umbrella policies were at issue in the prior and current actions.  See SR SOMF ¶¶ 23–29; Amerisure Resp. at 7–9.  In its final award, the arbitration panel found that "[d]efense costs incurred by Amerisure . . . are payable within limits."  Final Award (Dkt. 48-16).  The resolution of this issue in the arbitration was necessary and essential to the arbitration award.

Amerisure nonetheless contends that the issue decided in the arbitration is not identical to the issue before us in this case.  Amerisure Resp. at 10–16.  Amerisure appears to confuse arguments with issues, contending that it cannot be collaterally estopped from raising an argument as to why it was required to pay defense costs in addition to limits where the argument was not expressly ruled on by the arbitration panel.

In its case against Swiss Re, Amerisure advances two theories as to why the umbrella policies required it to pay Armstrong's defense costs outside of limits.  The first is that the "limit of liability" provision (also referred to as the "drop down" provision) requires it.  Amerisure Mot. at 10–18.  This provision states that the umbrella policy will "continue in force as underlying insurance in the event of exhaustion," subject to the primary policy's terms.  Id. at 10; Excerpted Umbrella Policy at PageID.740 (Dkt. 47-3)).  Amerisure argues that this means that, upon

7

exhaustion of the primary policy, the umbrella policy will adopt the "terms and conditions" of the primary policy, which state that Amerisure will pay expenses incurred in defending against any suit "in addition to the applicable limit of liability."  Amerisure Mot. at 10.

The second theory is that the "defense endorsement" provision requires payment of defense costs in addition to limits.  Id. at 18–21.  The defense endorsement states that, as to claims "which [are] not covered by the underlying policies . . . ," Amerisure "shall . . . defend any suit against the insured" and that "[t]he amounts incurred . . . are payable by the company in addition to the applicable limit of liability of this policy . . . ."  Id. at 3; Excerpted Umbrella Policy at PageID.746. Amerisure argues that the phrase "not covered" encompasses a situation in which a claim is not covered only because the underlying policy limits are exhausted; thus, once Armstrong had exhausted its primary policy, Amerisure was obligated to "defend any suit against the insured" and the defense costs would be "payable by the company in addition to the applicable limit of liability of [the] policy."  Id. at 19–21.

Amerisure does not dispute that its second theory—regarding the defense endorsement provision—was decided in the arbitration.  See Amerisure Resp. at 11–12.  But it argues that the "primary issue in this case" is whether the limit of liability provision required it to pay defense costs in addition to limits—in other words, whether its first textual argument is correct.  Id. at 10–11.  Swiss Re notes, and Amerisure admits, that Amerisure raised its argument about the meaning of the limit of liability provision during the Allstate arbitration.  Amerisure Resp. at 8; SR Reply at 3 n.4.  Amerisure states that "[t]here is no indication anywhere in the Interim Award, the Final Award, or the Order confirming the Final Award that that provision was decided or even addressed in connection with the Allstate/Amerisure arbitration."  Amerisure Resp. at 11 (emphasis in original).  For that reason, Amerisure argues, it cannot be collaterally estopped from raising this

argument now.

Amerisure is correct in stating that an issue must be actually decided in an initial case for it to be precluded in later litigation.  See Monat, 677 N.W.2d at 845 (requiring the issue to be precluded to "have been actually litigated and determined" in the earlier action); see also Hammer, 195 F.3d at 840 (same).  But Amerisure is wrong to read this requirement to mean that the earlier action must have decided each argument relevant to the issue for those arguments to be precluded in later litigation.[4]

The issue to be determined here is whether Amerisure must pay defense costs outside of limits.  Amerisure initiated this lawsuit in pursuit of a declaratory judgment stating that the umbrella policies required it to pay Armstrong's defense costs in addition to policy limits, as opposed to within policy limits, and that therefore Swiss Re is responsible for those defense costs under the reinsurance policies.  Amerisure's argument regarding the limit of liability provision is merely a new theory relating to that same issue.

This issue was actually litigated and decided during the Allstate arbitration.  As noted above, the arbitration panel characterized the question of "why Amerisure seemed to be paying defense costs in addition to—rather than within—policy limits and whether that practice exceeded Amerisure's obligations under the reinsured umbrella policies" as "the crux of the dispute" decided by the arbitration.  Allstate Ins. Co., 2020 WL 1445615, at *5.  The panel reached the definitive

---

[4] Amerisure cites four cases in support of its argument that this requirement is not satisfied: Brenes v. City of New York, No. 07-cv-5549, 2009 WL 742163 (2nd Cir. Mar. 23, 2009); O'Connor v. G. & R. Packing Co., 423 N.E.2d 397 (N.Y. App. 1981); Steen v. John Hancock Mut. Life Ins. Co., 106 F.3d 904, 912 (9th Cir. 1997); and One Beacon Ins. Co. v. Elite Ins. Agency, No. 06-cv-4150, 2007 WL 541967 (S.D.N.Y. Feb. 16, 2007).  While they do all support the proposition that an issue must be finally determined to have preclusive effect, none of them supports Amerisure's theory that that the first litigation must have made a determination on each argument advanced in the later litigation.

conclusion that the umbrella policies did not require Amerisure to pay Armstrong's defense costs in addition to limits. Id. Amerisure does not dispute this. See Amerisure Resp. at 11–12.

Put simply, because the arbitration panel decided how to interpret the umbrella policies in relation to whether Amerisure had to pay defense costs in addition to policy limits, Amerisure's policy interpretation arguments are precluded. Amerisure may not avoid collateral estoppel by framing different legal theories or arguments as separate issues. See United States v. United Techs. Corp., 782 F.3d 718, 728–729 (6th Cir. 2015) ("Issue preclusion does not disappear merely because the losing party puts on a better case the second time around."); Yamaha Corp. of Am. v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992) ("Once an issue is raised and determined, it is the entire issue that is precluded, not just the particular arguments raised in support of it in the first case.") (emphasis in original).

### 2.      Full and Fair Opportunity

When evaluating whether a party had a full and fair opportunity to litigate an issue in a prior proceeding, courts consider a variety of factors, such as whether the party was represented by counsel, presented evidence, engaged in discovery, or examined witnesses. See e.g., Central Transp., Inc. v. Four Phase Sys., Inc., 936 F.2d 256, 261 (6th Cir. 1991) (applying federal law and finding a full and fair opportunity where the parties were represented by counsel, were allowed to make opening and closing statements, presented voluminous testimonial and documentary evidence, and cross-examined witnesses following direct examination); W.J. O'Neil Co., 700 F. App'x at 492 (applying Michigan law and finding a full and fair opportunity where the party had "actively participated" in the hearing—enjoying representation from counsel, presenting opening and closing statements, and calling and examining witness).

As Swiss Re notes in its motion, the evidence indicates that Amerisure participated fully

10

in the Allstate arbitration: Amerisure engaged in discovery (including taking the depositions of several fact witnesses); submitted pre-hearing and reply briefs; and participated in a four-hour hearing during which "the Panel heard extensive argument, testimony, and evidence from both parties."  SR Mot. at 13; Amerisure Pet. to Confirm Final Award at 2–4 (Dkt. 11-4).  Amerisure itself petitioned the federal court in Illinois to confirm the award.  See Amerisure Pet. to Confirm Final Award.  Amerisure had a full and fair opportunity to litigate the issue of whether its umbrella policies required it to pay Armstrong's defense costs in addition to limits.

Amerisure disagrees with this conclusion, relying on three factors set forth in §§ 28–29 of the Restatement (Second) of Judgments, a treatise that the Michigan Supreme Court in Monat directed courts to use in evaluating a party's contention that it did not have a full and fair opportunity to litigate the issue in the prior proceeding:

(i)     The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action;
(ii)    The issue is one of law and . . . a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws; or
(iii)   A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them.

Amerisure Resp. at 16–17 (citing Monat, 677 NW.2d at 845 n.2).

Amerisure argues that the first factor is satisfied because it could not have obtained review of the arbitration award, as the arbitration provision in the Allstate facultative reinsurance certificate stated that "[t]he written decision of the majority shall be final and binding upon the parties under this certificate."  Amerisure Resp. at 17 (quoting Allstate Facultative Reinsurance Certificate at PageID.316, 318, 320 (Dkt. 25-3)).  Amerisure acknowledges that the arbitration award was confirmed by a federal district court, but it argues that confirmation is different from review and notes that the Northern District of Illinois court wrote in the opinion: "Judicial review

of arbitration awards is tightly limited; perhaps it ought not to be called 'review' at all."  Amerisure Resp. (quoting Allstate Ins. Co., 2020 WL 1445615, at *3 (punctuation modified)).

While review of arbitration awards is limited, courts in this circuit (applying both Michigan and federal law) frequently apply collateral estoppel to preclude parties from relitigating issues that were decided during arbitration.  See e.g., W.J. O'Neil Co., 700 F. App'x at 484; see also Central Transp., Inc., 936 F.2d at 259 (noting that "federal courts ordinarily give preclusive effect to arbitrations"); V Cars, LLC v. Chery Auto. Co., No. 08-cv-13113, 2013 WL 11308062, at *1 (E.D. Mich. Nov. 27, 2013) (explaining that the Sixth Circuit "has held that arbitral rulings have . . . collateral estoppel (issue preclusion) effects, and has therefore denied efforts to relitigate . . . issues of fact after they have been decided in arbitration").  This means that limited judicial review of arbitration awards cannot dictate that there was no full and fair opportunity to litigate—if that were the case, arbitration awards could never have a preclusive effect on later litigation.[5]

Amerisure also attempts to argue that the second factor is met, characterizing the fact that the arbitration resulted in a "mixed-bag" award that was favorable to Amerisure overall, but which required Amerisure to "take the bad with the good," as a "quintessential illustration" of an intervening change in the applicable legal context."  Amerisure Resp. at 18.  A "change in the applicable legal context" refers to a change in the law or how courts apply it.  See Duck Lake

---

[5] In Monat, the Michigan Supreme Court held that an inability to appeal, under some circumstances, will not preclude the application of collateral estoppel.  Monat, 677 N.W.2d at 847.  In that case, the court reasoned that the lack of appeal rights did not diminish the plaintiff's "full and fair opportunity" to litigate because he had "voluntarily relinquished" the opportunity to pursue an appeal in return for a guaranteed minimum recovery from the opposing party—a "wise tactical decision" that "afforded sufficient incentive for plaintiff's vigorous advocacy" in the initial litigation.  Id.  The parties' agreement to waive appeal rights in Monat is akin to Amerisure's agreement to arbitrate with Allstate.  While arbitration offers only limited review, it offers a prompt and less expensive mechanism for dispute resolution; and there is no indication that the arbitration was not "voluntary" or that the limited review otherwise prevented Amerisure from having a full and fair opportunity to litigate.

Riparian Owners Ass'n v. Fruitland Twp, No. 312295, 2014 WL 891079, at *3 (Mich. Ct. App. Mar. 6, 2014) (explaining that a change in the applicable standard for evaluating standing might constitute "an intervening change in the applicable legal context" for purposes of avoiding the application of collateral estoppel). Amerisure does not explain why a "mixed bag" award makes the current proceeding a meaningfully different legal context. In the prior proceeding, Amerisure had every opportunity and incentive to prevail on the issue it lost; it also had every opportunity and incentive to seek judicial review on the issue on which it lost, limited though it might be. While this proceeding is in a different context, there has been no change in the law or how courts apply it, and no showing that the application of collateral estoppel would result in an inequitable administration of the law.

Amerisure also raises the question of how the outcome might have changed had it been engaged in litigation with Armstrong—the insured—, instead of Allstate—the reinsurer—over whether Amerisure had to pay defense costs outside of limits. See Amerisure Resp. at 18–19. In that scenario, Amerisure submits that "Armstrong would make sure a court construed the policy terms liberally in its favor and likely would prevail under the 'drop-down' provision requiring [the umbrella policy] to continue in force as underlying insurance upon exhaustion of the primary." Id. Because Armstrong would be able to convince a court that defense costs were owed in addition to limits, Amerisure argues, "yet another reinsurer that was not even part of the Allstate/Amerisure arbitration should not be allowed to avoid reinsuring payments that Amerisure likely would be held to were Armstrong to take Amerisure to court." Id. at 19. Amerisure does not explain how this is related to the Restatement factors or how this interacts with established law on collateral estoppel. What may happen in a hypothetical lawsuit between Amerisure and Armstrong has no bearing on whether Amerisure had a full and fair opportunity to litigate in the Allstate arbitration.

Amerisure argues that the third factor is met because "a new determination of the issue clearly is warranted by differences in the procedures followed in the two actions."  Amerisure Resp. at 19.  Amerisure argues that the instant forum affords it procedural opportunities that were not available in the Allstate arbitration—such as the fact that arbitration generally is "'not strictly bound by evidence, law, or judicial oversight.'"  Amerisure Resp. at 26 (quoting Vandenberg v. Superior Ct., 982 P.2d 229 (Cal. 1999)).  Taken as a general statement about arbitrations, this assertion suffers from the same flaw as Amerisure's argument about lack of judicial review:  courts in this circuit routinely apply collateral estoppel to issues decided in arbitrations, so a general characteristic of arbitrations cannot be used to avoid the application of collateral estoppel here.

This argument also fails when applied to this context specifically.  Amerisure quotes the arbitration provision in the Allstate facultative certificates as stating that "[t]he arbitrators and umpires are relieved from all judicial formalities and may abstain from following the strict rules of law and they shall make their written award with a view to effecting the general purpose of this certificate rather than in accordance with the literal interpretation of the language."  Amerisure Resp. at 15 (quoting Allstate Facultative Reinsurance Certificates at PageID.316, 318, 320).  But Amerisure has not alleged any specific unfairness during the Allstate arbitration and has not explained how the arbitration's relief from judicial formalities affected the outcome.  See Central Transp., Inc., 936 F.2d at 261 ("Moreover, even though the arbitrators were lax in admitting evidence and were not bound by the Federal Rules of Evidence . . . these liberal procedures do not detract from the basic elements of adjudicatory procedures that the proceedings afforded them. Furthermore, the liberality applied to both parties equally.  The plaintiffs have not shown that the arbitration process to any extent was unfair or the decision unreliable.") (punctuation modified).

The same is true for Amerisure's argument that a difference in rules of construction for

14

insurance contracts renders the use of collateral estoppel unfair: courts are required to liberally construe insurance policies in favor of policyholders, while there is no such requirement for arbitration panels. Amerisure Resp. at 14–16. This argument would prevent any arbitration over insurance matters from having preclusive effect—an outcome that would essentially neuter the utility of such arbitrations, and for which there is no authority under Michigan or federal law. Additionally, Amerisure has not provided any evidence that this specific arbitration panel did not construe the policy in favor of the insured or that the arbitration "detract[ed] from basic elements of adjudicatory procedures that the proceedings afforded them." See Central Transp., Inc., 936 F.2d at 261 (punctuation modified).

Amerisure also notes that the Allstate facultative certificates, unlike the Swiss Re certificates, contained an "honorable engagement" arbitration provision, which required Amerisure to submit to arbitration and stated that the "arbitrators and the umpire are relieved from all judicial formalities and may abstain from following the strict rules of law . . . ." Amerisure Resp. at 20, 24; Allstate Facultative Certificate at PageID.316, 318, 320. Amerisure submits that the presence of the provision in the Allstate certificate and its absence in the Swiss Re certificate is a significant enough difference to prevent the application of collateral estoppel. Amerisure Resp. at 24. Amerisure cites Hartford Accident & Indem. Co., 98 F. Supp. 2d 251 (D. Conn. 2000), in support of this argument. But Hartford is irrelevant to the case at hand.

In that case, Hartford sued one reinsurer for coverage and brought an arbitration against another reinsurer. After winning the arbitration, Hartford moved for summary judgment against the defendant reinsurer, arguing that the favorable arbitration collaterally estopped the defendant reinsurer from raising certain affirmative defenses. Id. at 251. Among other reasons, the court declined to find that the initial arbitration had preclusive effect in the litigation because the

15

defendant reinsurer had not been a party to the arbitration and was not in privity with the reinsurer that went to arbitration with Hartford.  Id. at 256–258.  That case is distinguishable because it is an example of offensive use of collateral estoppel against an entity that was not a party to the prior proceeding, and, therefore, had no full and fair opportunity to litigate.  Id. at 258.  Here, Swiss Re attempts to impose the results of the arbitration on Amerisure, who was party to the prior arbitration—so the same concerns are not present.

Finally, Amerisure argues that the Court should decline to apply collateral estoppel because the panel's finding "is wrong."  Amerisure Resp. at 21.  Amerisure does not provide any case law for the proposition that collateral estoppel can be avoided by arguing that the original determination was "wrong," and the Court does not find it to be a persuasive argument.  If courts were to decline to apply collateral estoppel every time a party argued the initial determination was wrong, collateral estoppel would never be applied.

Amerisure's list of arguments as to why it did not have a full and fair opportunity to litigate in the issue in the Allstate arbitration does not successfully refute Swiss Re's showing to the contrary.  This factor weighs in favor of applying collateral estoppel.

### 3.    Mutuality of Estoppel

It is undisputed that there is no mutuality of estoppel here, as Swiss Re is invoking Allstate's loss on a particular issue in the arbitration, even though Swiss Re could not be bound by any outcome in the arbitration.  What the parties do dispute is whether that makes a difference.  Swiss Re says the lack of mutuality is irrelevant to its invocation of collateral estoppel; Amerisure says it is fatal.

"'Mutuality of estoppel requires that in order for a party to estop an adversary from relitigating an issue that party must have been a party, or in privy to a party, in the previous

16

action.'" <u>W.J. O'Neil Co.</u>, 700 F. App'x at 493 (quoting <u>Monat</u>, 677 N.W.2d at 846).  "The estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it, had it gone against him."  <u>Id.</u> (punctuation modified).

Both federal and Michigan courts excuse the mutuality requirement when collateral estoppel is asserted "defensively," as is the case here.  See <u>Blonder-Tongue Lab'ys, Inc. v. Univ. of Ill. Found.</u>, 402 U.S. 313, 328–329 (1971); <u>Monat</u>, 677 N.W.2d at 850–851.  In <u>Monat</u>, the Michigan Supreme Court adopted the reasoning of the Supreme Court in <u>Blonder-Tongue</u> when it held that "the lack of mutuality of estoppel should not preclude the use of collateral estoppel when it is asserted defensively to prevent a party from relitigating an issue that such party has already had a full and fair opportunity to litigate in a prior suit."[6]  <u>Monat</u>, 677 N.W.2d at 850.

Many Michigan and federal opinions distinguish between defensive and offensive uses of collateral estoppel by looking to the positioning of the parties in the litigation.  See e.g., <u>Georgia-Pacific Consumer Prods. LP v. Four-U-Packaging, Inc.</u>, 701 F.3d 1093, 1098–1099 (6th Cir. 2012) ("Because the defendant in this case is the party invoking issue preclusion, defensive collateral estoppel, rather than offensive collateral estoppel, applies."); <u>Monat</u>, 677 N.W.2d at 849 (Mich. 2004) ("In any lawsuit where a defendant, because of the mutuality principle, is forced to present a complete defense on the merits to a claim which the plaintiff has fully litigated and lost in a prior action, there is an arguable misallocation of resources.") (punctuation modified).  Swiss Re, the defendant here, is asserting collateral estoppel in an attempt to prevent Amerisure, the plaintiff,

---

[6] Michigan and federal courts are not identical in their treatment of the mutuality requirement. While federal courts allow "offensive non-mutual collateral estoppel" under certain circumstances, <u>see</u> <u>Parklane v. Shore</u>, 439 U.S. 322 (1979), Michigan courts have specifically rejected that approach.  <u>See</u> <u>Martin v. Metropolitan Life Ins. Co.</u>, 364 N.W.2d 348, 354 (Mich. Ct. App. 1985) ("Michigan has rejected the use of offensive non-mutual estoppel.").  Because the Court finds that Swiss Re is asserting collateral estoppel defensively in this case, the difference between Michigan and federal law on this point is immaterial to the Court's analysis.

17

from asserting that the umbrella policies required it to pay Armstrong's defense costs in addition to limits—a claim that it litigated and lost during the Allstate arbitration.

But Amerisure is correct to note that the fact that Swiss Re is the defendant in this action may not fully resolve the question of whether Swiss Re is asserting collateral estoppel offensively or defensively. Defensive collateral estoppel is usually invoked against a party who was a plaintiff in both the first and second action, while offensive estoppel is usually invoked against a party that was a defendant in both the first and second action. ABCDE Operating, LLC v. City of Detroit, 254 F. Supp. 3d 931, 948 n.26 (E.D. Mich. 2017). Here, Amerisure was the defendant in the first action and is the plaintiff in the second. Neither party has been able to supply a Michigan or Sixth Circuit case with this posture.

The reason for this unusual positioning is that both the Allstate arbitration and the current case were brought as actions for declaratory judgment. Declaratory judgment actions can often alter the roles of litigants—for example, they can allow a plaintiff to "seek[] to establish a defense against a cause of action which the declaratory defendant may assert" in anticipated subsequent litigation. Pub. Serv. Comm'n v. Wycoff Co., 344 U.S. 237, 248 (1952). Against this backdrop, Amerisure did not switch positions between the Allstate arbitration and the case before the Court—in both scenarios, regardless of its label as "plaintiff" or "defendant," Amerisure seeks a determination that it was required to pay defense costs to its insured in addition to policy limits, and pursues the corresponding reinsurance—initially from Allstate, and now from Swiss Re.

Here, Swiss Re's assertion of collateral estoppel is defensive—not only because Swiss Re is the Defendant in this case, but more fundamentally because it is seeking to use collateral estoppel to avoid Amerisure's claim of liability against it. In the Allstate arbitration, Amerisure sought to impose liability for defense costs on Allstate. In this case, Amerisure seeks to impose liability for

18

defense costs on Swiss Re.  Swiss Re is, therefore, in the defensive position, asserting collateral estoppel as a shield against Amerisure's attempt to impose liability.  See Hann v Carson, 462 F. Supp. 854, 859 n.2 (M.D. Fla. 1978) ("Defensive preclusion . . . is the use of res judicata or collateral estoppel by a party in a defensive posture to prevent another party from prosecuting an issue or claim.").

Excusing mutuality in this case makes sense under the rationales for excusing mutuality in the context of defensive collateral estoppel offered by Michigan and federal courts.  In Monat, the Michigan Supreme Court explained:

> "A party who has had a full and fair opportunity to litigate an issue has been accorded the elements of due process.  There is no good reason for refusing to treat the issue as settled so far as he is concerned other than that of making the burden of litigation risk and expense symmetrical between him and his adversaries.". . . In circumstances where mutuality is required and where collateral estoppel is asserted defensively, the mutuality requirement only encourages gamesmanship by a plaintiff.

Monat, 677 N.W.2d at 850–851 (quoting Restatement (Second) or Judgments § 29).  In Blonder-Tongue, the Supreme Court explained why requiring mutuality is problematic for defensive use of issue preclusion: "In any lawsuit where a defendant, because of the mutuality principle, is forced to present a complete defense on the merits to a claim which the plaintiff has fully litigated and lost in a prior action, there is an arguable misallocation of resources."  Blonder-Tongue, 402 U.S. at 329.  A decision from this district explained that a mutuality requirement should be inapplicable where asserted to "prevent Plaintiff from getting a second bite at [the] apple," W.J. O'Neil Co. v. Bulfinch, No. 11-cv-12020, 2016 WL 4158380 (E.D. Mich. Aug. 5, 2016), and the Supreme Court has said that the very purpose of defensive collateral estoppel is to "preclude[] a plaintiff from relitigating identical issues by merely switching adversaries," Parklane Hosiery Co. v. Shore, 439

U.S. 322, 330 (1979) (allowing use of collateral estoppel against patentee that had lost on validity of patent in initial lawsuit from suing a new defendant in subsequent case) (punctuation modified).

As explained above, Amerisure had a full and fair opportunity to litigate the issue of whether the umbrella policies it issued to Armstrong required Amerisure to pay defense costs within or in addition to policy limits. Allowing Amerisure to relitigate the issue against Swiss Re here would allow it relitigate the issue against any of its reinsurers—giving Amerisure a "second bite at the apple" and using additional judicial resources and risking inconsistent results each time.

The lack of mutuality in this case does not prevent Swiss Re from asserting collateral estoppel to bar Amerisure's declaratory action.

### III.  CONCLUSION

For the reasons explained above, the Court denies Amerisure's motion for summary judgment (Dkt. 47) and grants Swiss Re's motion for summary judgment (Dkt. 48). Within 14 days, the parties must submit a proposed judgment. If they do not agree on the form of the judgment, each party must file, within 14 days, a proposed judgment as an attachment to a notice of filing. Arguments in favor of the party's proposed judgment or against the opposing party's proposed judgment may be set forth in the notice. Each notice (exclusive of the proposed judgment) may not exceed five pages.


         SO ORDERED.

Dated: March 28, 2024                          s/Mark A. Goldsmith
        Detroit, Michigan                      MARK A. GOLDSMITH
                                               United States District Judge